308

THE STATE OF OHIO, APPELLANT, *v.*
WILKINSON ET AL., APPELLEES.

(No. 79-1627—Decided December 30, 1980.)

*Mr. Lynn Alan Grimshaw,* prosecuting attorney, and *Mr. R. Randolph Rumble,* for appellant.

*Mr. Roger L. Clark,* for appellees Wilkinson and Frost.

*Mr. Stephen C. Rodeheffer* and *Mr. Lawrence M. Kimble,* for appellee Keaton.

PAUL W. BROWN, J.   The state raises two propositions of law in this appeal. One challenges the Court of Appeals' deter-

mination that R. C. 2945.59 was not complied with in the admission of tape recordings against the defendants at trial. The other challenges the appellate court's holding that the videotaped deposition was improperly admitted in evidence at trial.

We first address the issues surrounding the videotaped deposition of undercover agent Phillips which was shown to the jury in the instant cause. To do so it is necessary to review the factual background of this matter. At some point in the course of proceedings in this cause, it became obvious to the prosecution that the preservation of Phillips' testimony was necessary because of his possible unavailability at trial due to his contraction of leukemia, which eventually claimed his life. By motion of the parties an in-court deposition of Phillips was taken on September 20, 1977. All the defendants had the right to attend this deposition but only defendant Keaton appeared. The other two defendants specifically waived their right to attend. During this deposition Phillips made many references to his dealings with persons named "Wilkinson" and "Frost" but no identification of these two defendants was made. The state, realizing this deficiency, sought the contested videotape deposition, alleging that identification testimony was "material" and "necessary" to its case. On November 8, 1977, the trial court issued an order permitting the taking of Phillips' deposition by means of videotape, but limited its scope to identification of the defendants. The entry authorizing the deposition was filed at 1:33 p.m. on November 8 and set the time for the videotaping for 2:00 p.m. the next day at a hospital in Columbus. Notice of the deposition was served at the office of counsel for defendants Wilkinson and Frost later that afternoon.

The deposition was held as scheduled the next day but neither of the defendants involved received timely notice of the deposition and, thus, neither attended. Counsel for defendants Wilkinson and Frost arrived just after Phillips concluded his identification and asked that the deposition be reconvened, but this request was refused. The videotape of the deposition was subsequently entered in evidence at trial over defense objections that proper notice was not received, that the defendants were not present, and that improper procedure was followed in taking the deposition.

Crim. R. 15 governs the use of depositions in criminal trials.[2] Crim R. 15(B) provides that every other party to the deposition must be given "reasonable written notice of the time and place" of its taking. Crim. R. 15(C) further guarantees defendants a right to attend depositions conducted in their cases. These rules are obviously designed, at least in part, to secure the rights of defendants to confrontation and cross-examination of those who testify as witnesses against them through a deposition.

It is clear that in the instant cause reasonable notice was not given to the defendants. While the reasonableness of notice must be assessed on a case by case basis reviewing all the circumstances involved, the notice, at a minimum, must give the parties time to prepare and time to travel to the deposition. *Chapman* v. *State* (Fla. App. 1974), 302 So. 2d 136; *State* v. *Basiliere* (Fla. 1977), 353 So. 2d 820. In this cause, counsel for defendants received notice less than 24 hours before the deposition. Sufficient notice was not given to the attorney to allow him to contact his clients, to prepare to examine the witness, and to travel the approximately 90 miles to Columbus for the taking of the deposition. Admittedly the witness was suffering from a fatal illness and speed was warranted, but the prosecution knew of the witness' condition long before this deposition was sought and the witness lived another 67 days after the videotaping.

Due to this failure of notice the defendants were unable to attend the deposition. Thus, any testimony given against them was defective because they were not afforded the opportunity for cross-examination and confrontation. The type of evidence given in the videotape is precisely the kind that the confronta-

---

[2] Crim. R. 15 provides in pertinent part:

"(B) The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. On motion of a party upon whom the notice is served, the court for cause shown may extend or shorten the time or fix the place of deposition.

"(C) The defendant shall have the right to attend the deposition. If he is confined the person having custody of the defendant shall be ordered by the court to take him to the deposition. The defendant may waive his right to attend the deposition, provided he does so in writing and in open court, is represented by counsel, and is fully advised of his right to attend by the court at a recorded proceeding."

tion clause is designed to guard against. *California* v. *Green* (1970), 399 U. S. 149, 156-58. Additionally, it has been established that these rights adhere where a witness testified through the means of videotape just as they do when direct testimony is presented before a jury at trial. *United States* v. *Benefield* (C.A. 8, 1979), 593 F. 2d 815. See, also, Comment Criminal Defendant has Sixth Amendment Right to Physically Confront Witness at Video-Taped Deposition, 1979 Wash. Univ. L. Q. 1106. The defendants can in no way be seen to have waived these constitutional guarantees. *Boykin* v. *Alabama* (1969), 395 U. S. 238, 243. Cross-examination of Phillips concerning his perceptions in making the identification, would have definitely been in order, because of his illness and the possible effect of the medication he may have been receiving.

We also note that the Rule of Superintendence governing videotaped testimony was not complied with in several respects, further tainting the deposition. No attempt was made to show the videotape to the witness following his testimony for his examination and no attempt was made to comply with the certification requirements set forth in the rule.[3]

In reviewing the record no other conclusion can be reached but that the evidence was prejudicial to defendants Frost and Wilkinson. It is recognized that this videotaped deposition was limited in scope, consuming only a few minutes, and consisting solely of a separate photographic identification of each of these defendants. The identity of the persons who sold the drugs to agent Phillips, however, was directly at issue.

---

[3] At the time of the taking of the deposition in question C. P. Sup. R. 15(B) governed videotaping. Due to the amendment of the rules, C. P. Sup. R. 12 now contains, in essence, the provisions set forth in the former rule. Former Rule 15(B), which governed the situation in the instant cause, stated, in part:

"4. When the videotape deposition has been taken, the videotape shall be shown immediately to the witness for examination, unless such showing and examination are waived by the witness and the parties.

"5. The officer before whom the videotape deposition is taken shall cause to be attached to the original videotape recording a certification that the witness was fully sworn or affirmed by him and that the videotape recording is a true record of the testimony given by the witness. If the witness has not waived his right to a showing and examination of the videotape deposition, the witness shall also sign the certification."

Extensive testimony was elicited by both sides concerning voice exemplars taken and compared to the secret tape recordings made of conversations with those who had drug dealings with Phillips. The testimony presented in this regard was conflicting and certainly not conclusive. Fingerprint evidence attempting to link defendant Frost to the crime was also offered, but it also was not conclusive in establishing identity.

Both defendants presented substantial alibi evidence concerning their whereabouts on February 3, 1977, the date the alleged sale of drugs took place. Records were brought forth reflecting the hospitalization of Wilkinson in a Florida clinic on the date in question. Evidence was also presented from a former Kentucky County judge that the judge was a passenger in Frost's car on February 3, 1977, when Frost received a speeding ticket and a citation for defective equipment on the car. In support of this testimony, a traffic citation and a deposition from the arresting officer were also offered in evidence.

There was no direct testimony from any witness, other than the videotaped deposition, identifying the defendants as the individuals who dealt with the undercover agent during the drug transaction charged. Thus, the admission of Phillips' testimony cannot be considered harmless error beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U. S. 18.

Thus, we affirm the Court of Appeals' determination that the convictions of defendants Frost and Wilkinson cannot stand.[4] This does not completely resolve this cause, however,

---

[4] The state claims that the videotape deposition testimony of Phillips was admissible as identification testimony under R. C. 2945.55, equating the playing of the identification on videotape to the testimony of a witness in whose presence the identification was made. R. C. 2945.55 provides that "[w]hen identification of the defendant is an issue, a witness who has on previous occasion identified such person may testify to such previous identification. Such identification may be proved by other witnesses."

This court, however, has limited the manner in which a third person's testimony can be used in this situation. It was stated in paragraph five of the syllabus in *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, that:

"Prior identification of the accused may be shown by the testimony of the identifier, or by the testimony of a third person to whom or in whose presence the identification was made, where the identifier has testified and is available for cross-examination, not as original, independent or substantive proof of the identity of the accused as the guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused."

The use made of the videotape here was not in conformity with that case.

because no videotaped testimony was given against defendant Keaton. While Keaton possessed the right to attend the deposition under Crim. R. 15(C) because the three defendants were tried together, he has demonstrated no prejudice resulting from his inability to attend, since no testimony was given concerning his identity.

The Court of Appeals reversed defendant Keaton's conviction because of the admission of two tape recordings, which were allegedly conversations he had with undercover agent Phillips. These secretly recorded tapes were laced with discussions concerning drug sales and other criminal activity. The trial judge reviewing these tapes held certain portions of the recordings, *i.e.,* discussions concerning completely extraneous criminal activity, inadmissible as evidence and those parts of the tapes were not played to the jury. All discussions relating in any way to the sale of drugs were admitted in evidence. The Court of Appeals held that the trial judge erred in allowing these tapes to be played to the jury, because there were statements made relating to other criminal acts aside from the sale of pentobarbital sodium for which the defendant was charged.

It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible. *Whiteman* v. *State* (1928), 119 Ohio St. 285; *State* v. *Hector* (1969), 19 Ohio St. 2d 167. Evidence of other acts is not admissible simply because such proof demonstrates a trait, disposition, or propensity toward the commission of a certain type of crime. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 401-02. See, also, McCormick on Evidence (2 Ed.) 447, Section 190.[5]

---

[5] The rationale behind this rule was succinctly reviewed in *State* v. *Curry* (1975), 43 Ohio St. 2d 66, at 68, where it is stated:

"A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime. 1 Underhill's Criminal Evidence (6 Ed.), 595, Section 205. Although such evidence may, in some cases, logically tend to establish that a criminal defendant committed the act for which he stands accused, the evidence is considered legally irrelevant for the reasons enumerated in *Whitty* v. *State* (1967), 34 Wis. 2d 278, 292, 149 N. W. 2d 557:

" '* * *(1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not

R. C. 2945.59 codifies the exceptions to this general rule, instances where the probative value of the evidence is sufficient to allow its admission. That statute provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

It is clear that certain references made in the tapes are to other criminal acts which to be admissible must come within the purview of R. C. 2945.59. Even discussions concerning the availability and price of different drugs can be characterized as evidence of other crimes, because R. C. 2925.03, which defines the offense of trafficking in drugs, makes it a crime to offer to sell controlled substances, if done knowingly. Further, this court has stated that "evidence of other acts of a defendant is admissible *only* when it 'tends to show' one of the matters enumerated in the statute and *only* when it is relevant to proof of the guilt of the defendant of the offense in question." (Emphasis *sic.*) *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 158.

The state's argument is essentially that these drug-related discussions are proper evidence under the statutory exception allowing evidence of the defendant's "scheme, plan or system."[6] This exception was reviewed at length in *State* v. *Curry* (1975), 43 Ohio St. 2d 66, at page 73:

" 'Scheme, plan or system' evidence is relevant in two general factual situations. First, those situations in which the

because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.' "

[6] The other exceptions to the rule allowing evidence of the defendant's motive, intent, absence of mistake or accident, are not applicable because these matters were not at issue during the trial and, thus, they cannot serve as a predicate for admission of the conversations. *State* v. *Curry, supra,* paragraph one of the syllabus.

'other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this subcategory of 'scheme, plan or system' evidence, the 'other acts' testimony must concern events which are inextricably related to the alleged criminal act."[7]

In reviewing the contested tape recordings we first note that the Court of Appeals apparently held that no portion of the tapes should have been played at trial. We cannot agree; only isolated references were made to other acts and the remainder of the tapes consisted of permissible, relevant evidence against defendant Keaton. We also conclude that the Court of Appeals erred in holding that the discussions and negotiations concerning the type, quantity, transportation and price of drugs available to Phillips, were inadmissible. These discussions, although involving other acts, were admissible as "scheme, plan or system" evidence which "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." *State* v. *Curry, supra,* at 73.

We note that other jurisdictions dealing with similar types of evidence involving other acts of defendants have allowed its admission. Such evidence has been frequently addressed in contexts involving the sale of drugs. For example, the Court of Appeals of New York in reviewing this type of evidence in *People* v. *Vails* (1977), 43 N. Y. 2d 364, 368-69, 372 N. E. 2d 320, stated:

"***In this case the trial court admitted the evidence of the prior transaction because the process of buying and making preparations for the sale was inextricably interwoven into this one transaction. Reference to the prior sale was intrinsic to the bargaining between defendant and Officer Molfetta. It concerned the price to be paid and the quality of

---

[7] The second factual situation discussed in *Curry,* identity evidence, has no application in the instant cause. While identity was an issue at trial, the discussion of other criminal acts is not at all probative of the identity of the speaker or those involved in the charged drug sale and, thus, such evidence cannot be deemed admissible for the purpose of identification.

the drugs, providing highly probative evidence relating directly to the crime charged. When the conversation is so inextricably interwoven with the crime charged in the indictment it may be received in evidence (*People* v. *Mitchell,* 40 A. D. 2d 117, 119) where, as in this case, the value of the evidence clearly outweighs any possible prejudice."

Also in accord is *Dail* v. *State* (1973), 255 Ark. 836, 502 S. W. 2d 456, involving a discussion of the availability of narcotics, and *United States* v. *Aleman* (C.A. 5, 1979), 592 F. 2d 881, where evidence of a cocaine transaction between two persons was held to be admissible as an integral part of events involved in a prosecution for the sale of heroin between those same parties.

Cases in other contexts also support the admission in evidence of an ongoing course of dealings between the defendant and a witness. The federal courts in construing Federal Rules of Evidence 403 and 404(b)[8] have noted that "[t]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States* v. *Roberts* (C.A. 6, 1977), 548 F. 2d 665, at 667, certiorari denied 431 U. S. 931; accord *United States* v. *Dudek* (C.A. 6, 1977), 560 F. 2d 1288, 1294, certiorari denied 434 U. S. 1037. Further, it has been stated that:

"* * *[E]vidence of other crimes may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'" (Citation omitted.) *United States* v. *Turner* (C.A. 7, 1970), 423 F. 2d 481, at 483-84, certiorari denied 398 U. S. 967. Accord *United States* v. *Calvert* (C.A. 8, 1975), 523 F. 2d 895, 907, certiorari denied 424 U. S. 911; *State* v. *Villavicencio* (1964), 95 Ariz. 199, 388 P. 2d 245. See, also, 1 Wharton's Criminal Evidence (13 Ed.) 547, Section

---

[8] Federal Rule of Evidence 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Recently enacted Ohio Evid. R. 404(B) was not in effect at the time of trial.

242; 22 Wright & Graham, Federal Practice and Procedure (1978 Ed.), 441, Section 5239.

In reviewing the taped testimony offered in the instant cause, it is clear that a great deal of the conversation concerning drugs involved ongoing negotiations and discussions which led to Keaton's indictment and trial for the February 3, 1977, sale of pentobarbital sodium to Phillips. This sale cannot be viewed in a vacuum; it was necessary for the jury to view the setting of the February 3 sale. The discussions of price and availability of other drugs (*e.g.,* Demerol, morphine and "morphomous") on the tape made on January 19 are highly probative of the later sale and are indicative of how Phillips, as an undercover agent, gained the confidence of the seller and purchased drugs from him.

Defendants claim that this evidence may not be admitted, citing language from *State* v. *Curry, supra,* at page 73, and *State* v. *Lytle, supra,* at page 403; because such evidence may be used only where it is "inextricably related" to the crime charged and where it would be "virtually impossible" to prove that crime without this contested evidence. In this cause, most of the evidence concerning other criminal acts contained on the January 19 tape was "inextricably related" to the crime charged, as already discussed. The prosecution, would have been severely hampered without the evidence, because the transactions recorded on this tape played an integral part in explaining the sequence of events that led to the February 3 sale. To hold the prosecution to a standard of "virtual impossibility" of proving the crime, however, is unrealistic. The policies behind prohibiting evidence of other independent criminal acts do not require such a stringent standard for admissibility. The rule is served well enough by a requirement that the contested evidence be inextricably intertwined and, thus, necessary to give the complete picture of what occurred.

Our allowance of the evidence concerning the availability of other drugs and the negotiations between the parties involved does not indicate a relaxed adherence to admission of testimony under R. C. 2945.59. To the contrary, the exceptions in the statute must be strictly construed. *State* v. *Burson, supra,* at 158. Indeed, although it can be concluded that most of the tape recordings played to the jury were admissible,

several references within the tapes were improperly allowed in evidence.

The January 19 tape contained one inadmissible piece of evidence. In a portion of the recorded conversation of that date the individual alleged to be defendant Keaton bragged of his participation in the theft of hypodermic needles.[9] In the February 16 tape this same person recounted an independent drug sale made to an unnamed third party.[10] These two taped references concerned other criminal acts totally independent and remote from the events which culminated in the February 3 sale of pentobarbital sodium. They were not involved in the course of dealings between the drug seller and Phillips. These references cannot be considered to be "inextricably related" to the crime charged nor can they be considered to "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." *State v. Curry, supra,* at page 73.

Additionally, although portions of the February 16 tape confirm the February 3 sale for which defendant Keaton stood trial and could aid in the jury's understanding of that transaction, great portions of that tape should have been held to be inadmissible by the trial judge. In that tape, made nearly two weeks after the sale of pentobarbital sodium, the availability of different drugs was again the principal topic of conversation. A possible sale of cocaine was discussed at great length.[11]

---

[9] "Needles? Damn, what did you do, rip off the Chicago Medical Center?

"The man said, back that***thing in here and hurry it up. The other guy paid for it and I went out of there. We brought it, but we took all of it. I mean it was stole. But we took it all."

[10] In a discussion of a possible cocaine sale, the following statements were made by the person seeking to sell drugs:

"One guy came through here,***. Them guys said we'll try an ounce of it. Well, I didn't know them too well, but I knew the guy putting up the money.

"***

"***He said, how much. I said, well, this sample here, being I don't know a***thing about it, and you don't know nothing about it, I'll let you have it for $1400. He told me, it's too***weak,***They handled some. But when they found it wasn't no good we didn't take any more."

[11] After an extensive discussion of the availability of a drug sample, the following exchange took place:

"Let me have the***[inaudible]***and I'll just pick that up with the coke at the same time. Just tell the man we're going to get the coke and that stuff at the same time.

While the announcement of the availability of drugs prior to the charged sale can be deemed interwoven and necessary to establish the setting of the crime, discussions concerning different drugs two weeks later cannot be so characterized. Defendant Keaton could have been arrested and indicted for the February 3 sale before these statements were even made. It is recognized that R. C. 2945.59 allows the admission of evidence of subsequent acts just as it permits evidence concerning prior acts, but in the instant cause, these acts were too remote to be probative of the charged offense and, thus, are irrelevant.

Due to the state of the evidence against defendant Keaton, we cannot say that the taped references to other criminal acts constituted harmless error. The tapes were an integral part of the prosecution's case against Keaton and the inadmissible statements within them were prominent and may have influenced the jury's verdict.

We thus affirm the Court of Appeals' determination that Keaton's conviction cannot stand because of the inadmissibility of "other acts" evidence given against him. Our extended discussion of the "scheme, plan or system" exception of R. C. 2945.59 is warranted, however, since the Court of Appeals erroneously concluded that no part of the contested recordings could be offered in evidence and the issue of the tapes admissibility could possibly arise if the defendant is retried.[12]

Accordingly, we affirm the Court of Appeals' reversal of the convictions of defendants Wilkinson and Frost on the basis of the improperly admitted videotaped deposition and we also affirm the reversal of defendant Keaton's conviction, but based upon improperly admitted tape recorded testimony.

*Judgments affirmed.*

---

"If that coke is good like you think it is, could you use a whole***pound of it?

"Okay, two thousand an ounce times ten is twenty thousand***[inaudible]***Let me ask if he wants to spend that much bread down here."

[12] This court has found it unnecessary to review the January 12, 1977, tape recording allegedly made during a conversation between defendant Wilkinson and Phillips, because Wilkinson's conviction must be reversed on other grounds. Should a retrial of Wilkinson take place, the admissible portions of the tape must be reviewed in light of this opinion and others interpreting R. C. 2945.59.

CELEBREZZE, C. J., W. BROWN, and SWEENEY, JJ., concur.

DOWD, J., concurs in part and dissents in part.

LOCHER and HOLMES, JJ., dissent.

DOWD, J., dissenting in part and concurring in part.

I concur with the majority opinion with respect to the first paragraph of the syllabus and the necessity to apply it to the facts at hand with respect to the convictions of Frost and Wilkinson.

However, I must respectfully dissent with respect to the reversal of Keaton's conviction. The tape recordings of the conversations between Phillips, the undercover agent, and Keaton were relevant to demonstrate the relationship between the two and to support the state's case with respect to the allegation that Keaton participated in the sale of the pentobarbital sodium. That Keaton saw fit to describe other crimes that he claimed to have committed in his conversations with an undercover agent is admissible, in my view, to demonstrate the confidence Keaton reposed in Phillips, believing him to be a comrade in arms with respect to illegal drug trafficking. Therefore, the coincidental fact that Keaton's revelations, if true, established his participation in other crimes should not make them inadmissible. Moreover, the state offered no independent evidence to support the uncorroborated claims of Keaton that he had committed the other crimes.

In sum, I agree with my colleague, Justice Holmes, that the tape recordings were admissible and the conviction of Keaton should be affirmed.

HOLMES, J., dissenting. I must dissent from the majority opinion as to both issues presented.

As to the claim of prejudicial error regarding the admission of the videotaped identification of the photographs of the defendants Wilkinson and Frost, even though reasonable notice might be absent for the taking of such deposition, it is my belief that such is not prejudicial here. Clayton D. Phillips, the undercover agent, had previously testified by way of deposition and had been examined and cross-examined as to his relationship with these defendants and the transactions

322

and sales involved in the indictment. The videotape merely provided him with the opportunity to directly identify the photographs of these defendants as being the photographs of the individuals about whom he had testified. The videotaping ceased at this point; thus, this procedure, in my view, only resulted in supportive evidence of a prior out-of-court identification of these defendants by Phillips.

As to the introduction of the tape recordings, I believe that the trial court did not err in allowing their introduction in that such recorded material was confined to conversations between Phillips and the defendants, Keaton and Wilkinson, concerning the items and the prices involved in the sale which actually took place between the parties. These tapes and their contents did not constitute evidence of "other crimes" as prohibited by R. C. 2945.59.

LOCHER, J., concurs in the foregoing dissenting opinion.