This an appeal from jury verdicts of guilty following trial before Judge Eileen Gallagher. Appellant Joseph J. McGrath claims that evidence of prior bad acts on his part were improperly introduced into evidence at trial, his case should have been dismissed or the issue tried to the jury upon an assertion of former jeopardy, his case improperly proceeded to trial one day after arraignment, and his trial counsel was prejudicially ineffective in several respects. We affirm.
From the record we note that McGrath and the victim, S.W. , knew each other since 1993, and began to date in April 1996. On September 4, 1996, they had a fight during which McGrath, using a baseball bat, fractured her thumb, left wrist and arm, and caused a partial collapse of her left lung. Police photos taken after the attack show her arm in a cast and various bruises and scrapes associated with a physical struggle. As a result of this incident, McGrath pleaded guilty to aggravated assault, a fourth-degree felony, in Cuyahoga County Common Pleas Court Case No. CR-343067 and was sentenced to a term of sixty days in a county workhouse and two years probation. The couple subsequently reconciled.
In June 1997, McGrath and S.W. went to a local bar and an argument ensued when, after midnight, she requested they leave. While driving her home, McGrath repeatedly punched her on the side of her head and told her that he was going to kill her and, after arriving at their apartment, he repeatedly punched her in the face and tried to strangle her with a towel and the electrical cord from a curling iron. After McGrath fell asleep and/or passed out, S.W. fled the apartment, called an ambulance from a pay phone, and was treated at a hospital emergency room and released later in the day. Police photos taken of the scene revealed the blood-splattered blue jeans she had worn and a bloody smear on a set of window blinds. The photos of S.W. show her with two black eyes, various bruises on her face and head, and rope or cord marks about her neck.
McGrath was then indicted on a variety of charges in Case No. CR-352256, pled guilty to felonious assault, a felony of the second degree, and was sentenced to two years in prison.
In a letter that McGrath wrote to S.W. shortly before his release, he told her he loved her and that he wanted to be with her; he spoke of how he had a good job and would be able to provide for her, how he had showered her with gifts and supported her during their relationship, and how he was the only person who would ever do so for her. He also stated, however, I thought I'd let you know I lost all my money because of this[,] well not all of it * * *, and discussed how he could settle a pending worker's compensation case he had, valued at about $40,000.[1]
When McGrath was released from prison on June 9, 1999, part of the conditions of his release was that he have no contact with S.W., be it direct, indirect, or via a third party, but he allegedly paged her repeatedly that very day. When he appeared at her home late the following day and she saw him on her front porch through the screen door, she slammed and locked her front door and dialed 911.[2] The police arrived and found a note on her front door, in what she said was McGrath's handwriting, stating, Hi honey. I wish you would call me. I just spent ten thousand dollars on a new car today. Let's get dinner and a beer. I'll be at the bar. I love you. On June 14 and 15, McGrath returned to S.W.'s home and knocked on her door.
Because of the many phone calls and pages that S.W. claimed to have been receiving from McGrath, she authorized Ameritech to place a phone trap on her line, which would register and trace all calls to her. From June 15th through June 26th, 1999, she received twenty-four phone calls from a U-Haul rental and storage business on Berea Road in Cleveland where McGrath worked part time. She also received 155 phone calls from a phone at McGrath's Willoughby, Ohio address. Other calls could not be specifically linked to him but seemed suspiciously connected, because they came from a phone at a Cleveland bar that McGrath and S.W. had once frequented and a Denny's restaurant on Brookpark Road near a Ford plant where McGrath worked.
The calls would often be placed in a series of five or more, spaced minutes apart. Most of the time, with caller I.D., S.W. would simply not answer the phone because she recognized the originating phone number as that of McGrath. On occasion, however, she would pick up the phone and tell him to stop calling and leave her alone. While he would generally tell her that he loved her and just wanted to see her, at times he threatened her, telling her that he would come to her house and kill her and her dog, or that he could cut her phone lines and break into her house while she was home without her even knowing it. During one such call, McGrath told her that he had been watching her as she sunbathed on her back porch.
On June 16, 1999, because of a complaint filed by S.W., McGrath was charged with menacing by stalking, a first-degree misdemeanor in Cleveland Municipal Court Case No. 1999-CRB-023475. After a series of pretrials and continuances, and a speedy trial waiver by McGrath, that case was dismissed without prejudice on October 21, 1999, at the request of the City prosecutor.
Against the backdrop of these events, McGrath had twice filed criminal complaints against S.W. On June 10, 1999, he claimed that he had met her earlier that day and that she had demanded $5,000 from him, or else she would accuse him of crimes and send him back to prison for violating his parole. After reviewing the allegations in the complaint and S.W.'s denial that she had ever met with McGrath, the City prosecutor decided not to pursue charges. On November 19, 1999, at about 3:30 a.m., McGrath called Cleveland police to report a breaking and entering and an assault by S.W. at the U-Haul storage facility on Berea Road. He claimed to the responding officers that she had kicked a door in at the facility, attacked him, and left. The officers noticed no fresh damage to the door, no injury to McGrath, and nothing irregular about the facility. Although McGrath followed up on these allegations by filling out another complaint with the Cleveland Prosecutor's Office, no action was taken against S.W.
On December 28, 1999, McGrath was arraigned in the Cuyahoga County Common Pleas Case No. CR-385315 on one count of retaliation, a felony of the third degree. After a series of pretrials, during which all of the above facts and circumstances were discussed with McGrath's assigned counsel and discovery was completed, the State re-indicted McGrath, on March 27, 2000, under Case No. 388833, the case sub judice, reflecting a total of seven counts:
 Count 1.: Retaliation (under R.C. 2921.05(B)); Counts 2-5: Breaking and Entering (under R.C. 2911.13(B)); Count 6: Falsification (under R.C. 2921.13); and, Count 7: Menacing by Stalking (under R.C. 2903.211).
The case proceeded to trial the following day. McGrath acted as his own co-counsel, and actively participated in all phases of trial. The judge granted his motion for a directed verdict on Count 5, and the jury rendered guilty verdicts on all remaining counts except Count 2: Breaking and Entering (dealing with McGrath's June 10, 1999 entry onto S.W's property and leaving the note), on which it found McGrath guilty of the lesser included offense of aggravated trespass. McGrath was sentenced to two years in prison on Count 1; six months in prison on each of Counts 3 and 4, to run consecutive to each other and consecutive to the sentence for Count 1; and, six months in the county jail for each of Counts 2, 6 and 7, to run concurrently with each other but consecutive to the sentences handed for Counts 1, 3 and 4; for a total aggregate sentence of three years in prison followed by six months in jail. Post-release control was not part of his sentence.
McGrath's first two assignments of error state:
 I. THE TRIAL COURT IMPROPERLY ADMITTED OTHER ACTS EVIDENCE CONCERNING THE APPELLANT'S PRIOR FELONY ASSAULTS AGAINST THE VICTIM IN VIOLATION OF EVID. R. 404(B), R.C. 2945.59 AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION;
 II. COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER OLD CHIEF WHEN HE FAILED TO STIPULATE TO THE APPELLANT'S PRIOR CHARGES OR PROSECUTIONS BY THE VICTIM.
McGrath focuses here on the admission of evidence of his 1996 and 1997 felony convictions for his crimes against S.W. He claims that her vivid testimony about those earlier incidents, combined with the admission of the photographs taken after each assault, were unfairly prejudicial and unnecessary for the presentation of the State's case. We disagree.
Evid.R. 404(B), dealing with the admissibility of other acts evidence states:
 "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
R.C. 2945.59, dealing with the admission of other acts in the context of a criminal trial, provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible.[3]
Courts, while strictly construing Evid.R. 404(B) and R.C.2945.59 and resolving doubts against admissibility,[4]
have applied the above rules in an attempt to minimize the amount of undue prejudice the admission of evidence of prior conduct will have on the disposition of the current charges faced by an accused. "It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible" to prove that a defendant has an undesirable trait, disposition or propensity toward the commission of a certain type of crime.[5] "Further, [the Ohio Supreme Court] has stated that evidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question."[6] As one court of appeals has elaborated,
 "Other act evidence is also permitted * * * when it forms the immediate background of the offense alleged and it would be difficult to prove that the accused committed the crime alleged without also introducing evidence of other acts. When the other acts demonstrate criminal conduct they should be `so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'"[7]
In the case sub judice, the State was required to prove all of the elements of the crimes of retaliation and menacing by stalking. Retaliation, for purposes of this case is defined as prohibiting the following conduct: "[n]o person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."[8] A defendant may only be convicted of menacing by stalking if the offender, "* * * by engaging in a pattern of conduct * * * knowingly cause[s] another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."[9]
Considering that many of McGrath's actions may seem harmless at first glance, the judge correctly permitted the introduction of testimony and photographs relating to his assaults upon S.W. as evidence both of motive and intent to retaliate against and stalk her and, independently, to prove the legitimacy of the threat of harm that McGrath presented to her through his conduct. While one may view McGrath's incessant calling and proclamations of love as over-zealous pursuit by a misguided suitor, these acts, placed within the context of McGrath's threats after release from prison and a realistic view of his actions before incarceration, would undoubtably aid a jury in evaluating his overall conduct and controlling disposition. While the introduction of this evidence was prejudicial to McGrath, we cannot say that it was unfairly prejudicial,[10] nor that the judge abused her discretion in allowing its introduction.
McGrath's second point of attack relies on the holding in Old Chief v. United States,[11] and his argument that his lawyer should have stipulated to the fact of his prior convictions, thereby preventing the introduction of damaging evidence surrounding those cases. He asserts that the ineffectiveness of his lawyer impermissibly tainted those proceedings. We do not agree.
In order for McGrath to successfully assert a claim that his counsel was so ineffective as to deprive him of constitutional rights, he must satisfy a two-part test:
 When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.[12]
Regardless of any stipulation agreed on prior to trial, the State would retain the right to introduce details about the offenses to show McGrath's intent and the fear of harm he caused S.W. because many of his actions may have seemed innocuous absent the background information. Additionally, Old Chief expressly confines its holding to its own facts, based upon Fed.Evid.R. 404(b), and carries, at best, persuasive weight before this court. In Old Chief, the U.S. Supreme Court ruled that, where a defendant charged with possessing a weapon while a felon under Federal law offers to stipulate to the fact of a felony conviction, Federal court and the U.S. Government must agree to such a stipulation so that details of the prior felony conviction do not lure the jury into convicting the accused of other crimes charged, based on the details of the past conviction, which would otherwise have no relevance to the current case.[13] In the case sub judice, however, the circumstances of McGrath's prior assault convictions clearly carry relevance of their own, apart from the fact that those convictions exist. Moreover, while possessing a weapon while a felon is essentially a status crime, retaliation and menacing by stalking each contain elements of intent which make the background information of McGrath's relationship with S.W. particularly relevant.
We also note that the judge in her charge to the jury, specifically instructed it not to consider any evidence of McGrath's prior convictions for the purpose of establishing his bad character or propensity for committing the crimes for which he was on trial. It was also instructed that any evidence of prior crimes or acts was to be used solely to determine McGrath's "motive, opportunity, intent or purpose, preparations or plans to commit the offense charge in this trial. (sic). That evidence cannot be used for any other purpose." We find that this instruction, while not requested by McGrath, was correctly given and is curative of any unfair prejudice that may have even arguably resulted from the admission of evidence of McGrath's prior crimes and acts.
McGrath's first and second assignments of error are overruled.
 III. THE TRIAL COURT IMPROPERLY DENIED THE APPELLANT'S MOTION TO DISMISS BASED ON DOUBLE JEOPARDY AND IMPROPERLY DENIED THE APPELLANT'S RIGHT TO HAVE THE JURY DECIDE JEOPARDY UNDER R.C. 2943.06.
On June 16, 1999, McGrath was charged with one count of menacing by stalking in Cleveland Municipal Court under Case No. 1999-CRB-023475. McGrath, in that case, filed a motion to dismiss for untimely prosecution. According to the computer-generated printout of the court docket, two entries appear dated October 21, 1999: one stating that the case is dismissed without prejudice, and one stating that Defendant's motion to dismiss is well taken and is hereby granted. The case is dismissed and defendant discharged * * *. Based upon this entry in the computer docket, McGrath filed a motion to dismiss the case sub judice on the ground of double jeopardy relating to all charges except Count 6, Falsification, which all parties agree stems from McGrath's November 19, 1999 police report and accusations against S.W., and not from his conduct between June 9 to June 25, 1999.
At his arraignment on March 27, 2000, McGrath argued his motion on the record and requested that the issue of double jeopardy be determined by a jury, under R.C. 2943.06, which states:
"If a defendant pleads a judgment of conviction, acquittal, or former jeopardy, the prosecuting attorney may reply that there is no such conviction, acquittal, or jeopardy. The issue thus made shall be tried to a jury * * *."
While criminal procedure was once governed by Chapter 2943 of the Revised Code, the procedure for the taking of pleas and disposition of criminal pretrial matters is now controlled by Crim.R. 11 and 12. To the extent that the Rules of Criminal Procedure do not abridge, enlarge, or modify any substantive right previously existing under Chapter 2943, the Rules of Criminal Procedure, as adopted by the Ohio Supreme Court, control.[14]
However, we find it unnecessary to address whether R.C.2943.06 has been superceded by Crim.R. 11 because McGrath's assertion of double jeopardy through a motion to dismiss as opposed to a plea on this issue waived his right to a jury determination of it. According to R.C. 2943.04, any plea other than "guilty" or "not guilty" must be in writing in order to be effective. McGrath orally pled not guilty to each and every count at his arraignment and did not follow the correct statutory procedure for the entry of a plea of double jeopardy.
Under Crim.R. 11, a plea of double jeopardy does not even exist. According to Crim.R. 12(B)(1), a defendant may raise defenses and objections based on defects in the institution of the prosecution prior to trial. Crim.R. 12(E) provides that the judge shall rule on such motions before trial, and that such issues may be determined * * * based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means. * * * Where factual issues are involved in determining a motion, the court shall state its essential findings on the record. It was proper for the judge to determine the issue of double jeopardy at a pre-trial hearing on the record, absent a jury.
At that hearing the State argued that jeopardy had not attached because Case No. 1999-CRB-023475 had been dismissed without prejudice upon motion of the City Prosecutor, and produced as evidence the journal entry signed by Judge Ralph Perk. McGrath submitted a certified copy of the computer-generated printout of the Municipal Court's docket reflecting the entry of dismissal of the case and discharge of McGrath upon his own motion.
"A judgment is effective only when entered on the journal by the clerk."[15] "Crim.R. 32(B) reflects the axiom that `[a] court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.' [citations omitted]."[16] A ruling by a judge does not become effective merely because it appears in a court's computerized docket, but only upon journalization of an order signed by the judge.[17]
The only cognizable evidence of the disposition of Case No. 1999-CRB-023475 was the signed journal entry of dismissal without prejudice upon motion of the City of Cleveland Prosecutor. "* * * [I]f the indictment or information was dismissed, without a judgment of acquittal, * * * in order to hold the defendant for a higher offense."[18]
It is not an acquittal of the same offense. It was not an error to rule that jeopardy had not attached and appropriately allow Counts 1 through 4 and Counts 6 and 7 to go to trial. McGrath's third assignment of error is overruled.
 IV. THE TRIAL JUDGE ABUSED HER DISCRETION IN FAILING TO GRANT A CONTINUANCE OF THE TRIAL DATE ONE DAY AFTER ARRAIGNMENT AND VIOLATED THE DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION;
McGrath contends he should have been granted continuance of trial because, on the previous day, his indictment for one count of retaliation had been nolled and he was then arraigned on a new expanded seven-count indictment: retaliation, four counts of breaking and entering, falsification and menacing by stalking, for which he had no time to prepare a defense. In announcing the standard of review of a decision to deny a continuance of trial, the Ohio Supreme Court has stated:
 "The grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger (1981), 67 Ohio St.2d 65, 67, 21 Ohio Op. 3d 41, 43, 423 N.E.2d 1078, 1080. In evaluating a motion for a continuance, a trial court should consider, inter alia, the length of the delay requested; the inconvenience to the litigants, witnesses, opposing counsel, and the court; and whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived.[19]
"`There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'"[20]
The parties agreed that the re-indictment of the case sub judice was based completely on facts, allegations and circumstances discussed during the completed discovery of Case No. 385315 except for Count five, breaking and entering, arising out of McGrath's message that he had watched S.W. sunbathing. Although his lawyer's request for a continuance to investigate this charge was denied, we find no prejudice because the judge granted a directed verdict under Crim.R. 29 on that count.
While McGrath complains that the denial of a continuance of trial was an abuse of the judge's discretion, he cites no legitimate reason for a continuance, nor does he identify any harm or prejudice he suffered because of the denial. McGrath's fourth assignment of error is overruled.
 V. THE TRIAL COURT DENIED THE APPELLANT DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION WHEN CONTRADICTORY JURY INSTRUCTIONS WERE GIVEN AND AN ACQUIT FIRST JURY INSTRUCTION WAS GIVEN AND COUNSEL FAILED TO OBJECT.
McGrath asserts that, although his lawyer failed to object, the judge committed plain error in issuing contradictory jury instructions and in giving an acquit first jury instruction. The judge instructed the jury that, in order for it to reach a guilty verdict on any of the three breaking and entering counts, it had to find, beyond a reasonable doubt, that McGrath entered on S.W.'s property with the purpose to retaliate against her. During deliberations, the jury subsequently asked the judge[21] if it had to find that McGrath intended to commit a felony against S.W. in order to reach a guilty verdict on a breaking and entering charge, to which the judge answered, "No." Subsequently, the jury asked if it was required to consider whether McGrath was guilty of aggravated trespass, a lesser included offense of breaking and entering, if it could not reach a decision on a breaking and entering count. The judge instructed the jury as follows:
 If you find that the State failed to prove all of the essential elements of the crime breaking and entering * * *, your verdict must be not guilty. In that event, you would proceed to consider the lesser included offense of aggravated trespass. Furthermore, in the event you are unable to agree on any one or more counts of breaking and entering, then as to such count or counts, you would proceed to consider the lesser included offense of aggravated trespass.
"On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."[22] Failure to preserve any perceived error in the judge's instruction of the jury constitutes a waiver of that issue on appeal.[23]
State v. Thomas,[24] cited by McGrath in support of his argument, is inapplicable to the facts of his case. Thomas stands for the proposition that "[t]he jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense,"[25] but here no such instruction was given. While it would have been better to incorporate the "inability to agree" language, stating "[i]f you find" does not imply unanimity, and the Thomas court found the exact instruction acceptable.[26] McGrath's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from the appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] In reality, McGrath had been collecting worker's compensation benefits due to a work-related injury and had forfeited the ability to do so upon his incarceration. The case he refers to seems to be some sort of products-liability suit he filed in connection with his injury.
[2] A tape of the call was played for the jury during the trial.
[3] State v. Broom (1988), 40 Ohio St.3d 277, 282,533 N.E.2d 682, 690.
[4] Id.
[5] State v. Wilkinson (1980), 64 Ohio St.2d 308, 314,415 N.E.2d 261, 267.
[6] Id. at 315, 415 N.E.2d at 268.
[7] State v. Smith (1992), 84 Ohio App.3d 647, 667,617 N.E.2d 1160, quoting State v. Wilkinson, supra.
[8] R.C. 2921.05(B).
[9] R.C. 2903.211(A).
[10] Evid.R. 403(A) states, Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
[11] (1997), 519 U.S. 172.
[12] State v. Lytle (1976), 48 Ohio St.2d 391, 396,358 N.E.2d 623, 627.
[13] Id.
[14] See Section 5(B), Article IV, Ohio Constitution.
[15] Crim.R. 32(B).
[16] State ex rel. White v. Junkin (1997), 80 Ohio St.3d 335, 336,686 N.E.2d 267, 269.
[17] Id. at 337, 686 N.E.2d at 269.
[18] R.C. 2943.07.
[19] State v. Jones (2001), 91 Ohio St.3d 335, 342,744 N.E.2d 1163, 1174.
[20] State v. Unger (1981), 67 Ohio St.2d 65, 67,423 N.E.2d 1078, 1080, citing Ungar v. Sarafite (1964),376 U.S. 575, 589.
[21] At this point in the proceedings, Judge Eileen Gallagher was unavailable, and juror questions were addressed by Judge Christine McMonagle.
[22] Crim.R. 30(A); See, also, State v. Bailey (Nov. 16, 2000), Cuyahoga App. No. 76685, unreported.
[23] State v. Bailey, supra.
[24] (1988), 40 Ohio St.3d 213, 533 N.E.2d 286.
[25] State v. Thomas, supra, syllabus, at paragraph three.
[26] Id. at 40 Ohio St.3d at 220, 533 N.E.2d at 292-293.