OPINION
{¶ 1} Defendant-appellant, Ronald Gene Hodge, was indicted by the Franklin County Grand Jury on December 14, 2001, on two counts of aggravated murder, two counts of aggravated robbery, one count of aggravated burglary, two counts of robbery, two counts of having a weapon while under disability, one count of kidnapping, and one count of tampering with evidence. On January 25, 2001, appellant was indicted on one count of receiving stolen property. All of the offenses were alleged to have occurred on December 4, 2001.
 {¶ 2} The two cases were consolidated for trial. Defense counsel made an oral motion to sever counts eight, nine, ten and 11 (one count of aggravated robbery, two counts of robbery, and one count of kidnapping), which pertain to a robbery at a Wendy's restaurant and the cashier, Eric Hillstead. The trial court overruled the motion and defendant waived his right to a jury trial on counts six and seven, having a weapon under disability.
 {¶ 3} After the state finished presenting its evidence, defendant moved for dismissal pursuant to Crim.R. 29. Pursuant to that motion, count two, aggravated murder, was amended to murder and the reference to prior calculation and design in the death penalty specification was omitted. Count five, tampering with evidence, was dismissed.
 {¶ 4} Following the presentation of evidence, the jury found defendant guilty of aggravated murder and the accompanying specifications in count one of the indictment, aggravated robbery and the firearm specifications in count three of the indictment, aggravated burglary in count four of the indictment, aggravated robbery and the firearm specifications in count eight of the indictment, kidnapping and firearm specifications in count 11 of the indictment, and receiving stolen property in the consolidated case. After the jury reached its verdict, the court realized that the jury had not filled out verdict forms for counts two, nine and ten. Because those sentences would have merged with other counts had the jury filled out the verdict forms, the prosecutor requested that those counts be dismissed and they were. The trial court sentenced defendant to life imprisonment without the possibility of parole.
 {¶ 5} Thereafter, defendant-appellant filed a notice of appeal in this court wherein he asserts the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ADMITTING EVIDENCE OF APPELLANT'S PRIOR BAD ACTS.
 {¶ 6} On December 4, 2001, shortly after midnight, a man armed with a pistol attempted to rob the Wendy's restaurant located on South High Street in the German Village area. Eric Hillstead testified that he was working at the drive-thru window that morning when a man with a gun approached him at the window and demanded money. (Tr. 447-451.) Hillstead told the man that he could not open the register. The man struck him on the arm and fled on foot. (Tr. 453.) Hillstead testified that he got a good look at the man. (Tr. 450-451.) The next day, Hillstead saw appellant's picture in the Columbus Dispatch and recognized him as the man who had attempted to rob him. (Tr. 454-455.) Later, Hillstead selected appellant's picture from a photo array and identified him as the man who attempted to rob him in the early morning hours the night before. (Tr. 452-454, 457.)
 {¶ 7} At approximately 1 a.m., on that same morning, the Village Inn, also located on South High Street, was robbed and the night clerk, Sam Specht, was shot and killed. Rhonda Booth-Duvall testified that she was employed as the manager of O'Shea's Sports Club located at 920 South High Street on December 4, 2001. O'Shea's is located in the basement of the Village Inn where Specht worked. O'Shea's could be reached through a door on South High Street and also through a door in the Village Inn lobby. (Tr. 75-80.)
 {¶ 8} Duvall testified that on December 4, 2001, at one o'clock in the morning there were only two patrons remaining at O'Shea's. As Duvall was preparing to lock-up for the evening, she walked up the stairs leading to the motel lobby. At that time, she heard a loud noise followed by a noise that sounded like a gun shot from the motel. (Tr. 80-82.) Before calling 911, Duvall decided to find out what had occurred. When she heard more loud noises, she decided to exit via the South High Street door and look around. (Tr. 84-86.) Once outside, Duvall heard another noise, turned to her left, and saw a man standing in front of the door she had just exited. He was carrying what she first thought was a television. (Tr. 85-86.) Duvall testified that the area was well lit, and that she was able to get a good look at this man. (Tr. 86-88.)
 {¶ 9} Duvall saw Patrick Grigsby, one of the customers at O'Shea's, run through the lobby of the motel. She followed him and found Specht lying in a pool of blood behind the desk. Duvall called 911. (Tr. 90-91, 111-113.)
 {¶ 10} Duvall then entered the back office where the video equipment was kept and noticed that the video camera which monitored the motel lobby as well as the VCR were both gone. She also noted that the cash drawer from the register was open and only had a little bit of change in it as well as some blood. (Tr. 91-117.)
 {¶ 11} Later, Duvall saw an article in the Columbus Dispatch which included a picture of appellant. Duvall testified that she knew immediately that appellant was the man she had seen carrying the equipment out of the Village Inn. (Tr. 118-119.) Duvall later selected appellant's picture from a photo array shown to her by Detective Carl Rankin. (Tr. 119-122.)
 {¶ 12} Paul Loeffler testified on behalf of the state. Loeffler was 52 years of age at the time, a 29 year veteran of the Columbus Fire Department, and married. (Tr. 294.) Loeffler testified that, at the time of the incident, he was involved in a sexual relationship with a man named Jarred Clark, who was living at the South Winds Motel on South High Street, directly across the street from the Village Inn. (Tr. 265-271.) In September 2001, Clark introduced Loeffler to crack cocaine and they smoked it together three to four time a week. (Tr. 267-269.)
 {¶ 13} Loeffler testified that he first met appellant the Friday before the incident. Clark introduced Loeffler to appellant, whom Loeffler knew as "J.R.," and his step-father, Doug. Appellant was one of Clark's cocaine suppliers. Loeffler and Clark bought cocaine from appellant Friday night at the Village Inn, where appellant was staying. Saturday morning, Loeffler and Clark got more cocaine from appellant and Doug before appellant and Doug left to get more cocaine. Loeffler testified that while they were in appellant's room, Doug had a gun which was jammed. Apparently, appellant told Doug that he would take care of the gun. At that point, Loeffler decided that he and Clark should leave because appellant and Doug were acting very hyper. (Tr. 272-275.)
 {¶ 14} Loeffler testified further that appellant and Doug came to Clark's room later and they gave appellant money to buy more cocaine. Appellant and Doug left around 8:30 p.m., and came back later informing Loeffler and Clark that they had been ripped off. (Tr. 275-278.) According to Loeffler, appellant and Doug left the motel again around 10:30 p.m., and then returned between 11:30 p.m. and midnight. Loeffler testified that they were both very upset because they had not been able to get any more cocaine. Appellant and Doug left again. (Tr. 278-279.) Thereafter, Loeffler and Clark left the motel and saw appellant coming from the building to the North carrying a black box. Appellant got into his car which was near Loeffler's car. Appellant approached Clark and commented that "the guy grabbed [me] and [I] had to shoot him." (Tr. 279.) Appellant then got in his car and left. (Tr. 279-280.)
 {¶ 15} At that time, Loeffler considered calling the police; however, he did not because he knew he was somewhere that he should not be and doing things he should not be doing. (Tr. 283.) Loeffler and Clark returned to the area around 2:30 a.m., and noticed that the Village Inn had been cordoned off and there were police cars in the parking lot. At the SuperAmerica, Clark learned that someone had been shot. (Tr. 284.) Loeffler and Clark returned to Clark's room. Clark took a phone call from either appellant or Doug requesting that Loeffler and Clark come to see them at the Budget Hotel. Loeffler drove Clark there and dropped him off at room nine. At 6 a.m., Clark called Loeffler and arranged for them to meet at the McDonald's on South High Street across from the Great Southern Shopping Center. (Tr. 285-289.)
 {¶ 16} A little after 7 a.m. Loeffler, Clark, and appellant met at the McDonald's. According to Loeffler's testimony, appellant told him that he had gone to Wendy's and tried to rob the person at the drive-thru cash register; however, he did not have any money. Appellant then told Loeffler that he went to the Village Inn motel, that the guy grabbed him and that he had to shoot him. Appellant told Loeffler that he took the video recorder. (Tr. 289-291.) A police cruiser entered the parking lot and Loeffler felt appellant put what felt like a gun to his stomach. Loeffler explained to appellant that he was not being set-up. After the police cruiser left, appellant put the object away. (Tr. 291-293.)
 {¶ 17} Loeffler finally decided that he could not keep quiet about what he knew and called a friend of his, Chief Carl Lawhorn, who arranged for Loeffler and Clark to meet with Detective Rankin. At that time, Loeffler told the police everything he knew and the police were eventually able to arrest appellant. When appellant's motel room was searched, the police collected a video machine, broken pieces of black plastic, a piece of black electrical wire, a wooden Smith Wesson gun box and ammunition for 9 millimeter bullets manufactured by Merc. The video equipment found under the bed in room nine of the Budget Hotel belonged to the Village Inn motel. (Tr. 381-392.) When police attempted to arrest appellant, he fled but was ultimately apprehended. Appellant's step-father Doug shot at the police while they were attempting to arrest him and he was killed by return fire. (Tr. 490-491.) Doug had two guns in his possession, one of which was the murder weapon. (Tr. 520.)
 {¶ 18} Prior to trial, appellant made an oral motion to sever the counts pertaining to the attempted robbery of Eric Hillstead at Wendy's restaurant, counts eight through 11, from the remaining counts and requested that they be tried to the court in a separate trial. The court overruled the motion, and appellant waived his right to a jury trial on counts six and seven, the weapons under disability charges. Following the trial, appellant was found guilty as indicated previously and sentenced to life imprisonment without the possibility of parole. Thereafter, appellant filed the instant appeal.
 {¶ 19} Although appellant sets forth only one assignment of error, he raises two separate issues. First, appellant contends that the trial court erred by admitting evidence of appellant's bad acts in the form of testimony of his prior possession of a handgun at trial. Second, appellant argues that the trial court erred in refusing to sever the counts involving attempted robbery of Eric Hillstead at Wendy's.
 {¶ 20} Appellant contends that the trial court erred by permitting the state to present evidence of appellant's prior bad acts. Specifically, appellant contends that the trial court erred by permitting the state to present evidence that appellant had, while possessing a firearm, robbed a restaurant 45 minutes prior to the robbery and homicide at the Village Inn. Eric Hillstead testified that appellant approached him at the Wendy's restaurant drive-thru and attempted to rob him while possessing a firearm. Defense counsel had raised this argument before the court in arguing that the counts involving the attempted robbery at Wendy's should be severed from the other counts.
 {¶ 21} Evid.R. 404(B) provides as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 22} As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial is in-admissible. Exceptions to this general rule are codified in R.C. 2945.59 which provides as follows:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 {¶ 23} Therefore, as the court held in State v. Thompson (1981),66 Ohio St.2d 496, other acts testimony is relevant and admissible under the "scheme, plan, or system" exception of R.C. 2945.59, where those acts form part of the immediate background of the crime charged and are "inextricably related" to the acts alleged in the indictment such that the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. Id. at 498, citing State v. Wilkinson (1980), 64 Ohio St.2d 308.
 {¶ 24} In the present case, the evidence showed a certain plan or scheme. Loeffler testified that appellant was a cocaine supplier for Clark and that appellant was attempting to obtain cocaine to sell to Loeffler and Clark. Loeffler also testified that appellant took their money and bought what appellant thought was cocaine from some person and then found out that he had been ripped off. As such, Loeffler testified that appellant now needed to find both money and more cocaine. Furthermore, Loeffler testified that, after the robbery attempt at Wendy's, appellant returned to the motel room and was frustrated because he had not been able to get any money to buy more cocaine. As such, whether these offenses had been tried separately or not, the evidence would have been admissible in both trials to show scheme, plan, or system.
 {¶ 25} Crim.R. 8(A) permits the joinder of offenses:
 * * * [I]f the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
 {¶ 26} The law favors joining multiple offenses in a single trial under Crim.R. 8(A), if the offenses charged are of the same or similar character. State v. Lott (1990), 51 Ohio St.3d 160. An accused may move to sever the offenses under Crim.R. 14 upon the showing of prejudice. However, for an appellate court to reverse a trial court's ruling denying a motion for severance, the defendant must demonstrate that the trial court abused its discretion.
 {¶ 27} Under Crim.R. 14, the defendant has the burden of affirmatively showing that his rights were prejudiced. He must provide the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial. Id. at 163.
 {¶ 28} Appellant contends that he was prejudiced by the joinder of the offenses because the testimony from witnesses involved in the robbery attempt at Wendy's indicated that appellant had a firearm in his possession shortly before Sam Specht was shot and killed at the Village Inn.
 {¶ 29} Trial courts are given considerable latitude in determining whether a severance is warranted and appellate courts review the decision for an abuse of discretion. State v. Wilkerson, Franklin App. No. 01AP-1127, 2002-Ohio-5416. In considering whether a trial court has abused its discretion, the test is whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his discretion in only one way — by severing the trial. A defendant must show clear, manifest and undue prejudice in violation of a substantive right resulting from the failure to sever. United States v. Lane (1986),474 U.S. 438, 106 S.Ct. 1507.
 {¶ 30} Inasmuch as this court finds that the evidence would have been admissible in both trials whether or not the cases were tried separately or jointly, appellant has not shown that he was prejudiced by the presentation of this evidence in this trial and appellant has not demonstrated that he was prejudiced by the trial court's failure to sever the counts involving the attempted robbery at the Wendy's restaurant. As such, appellant's assignment of error is not well-taken and is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.