JOURNAL ENTRY AND OPINION
This is an appeal from the convictions and sentences imposed upon Mark Rotarius following a jury trial before Judge Shirley Strickland Saffold. He claims evidentiary errors and challenges his consecutive sentences for possession of marijuana in a quantity exceeding 20,000 grams and preparation of drugs for sale (i.e. marijuana) in a quantity exceeding 20,000 grams as contrary to law. We affirm the convictions but vacate the sentences and remand.
From the record we glean the following: On March 3, 2000, Rotarius flew from Ontario, California to Cleveland and rented accommodations at the Extended Stay America Hotel in Brooklyn. He paid $450 in cash for a week's rental after he attempted, unsuccessfully, to pay with two credit cards. On March 5, he returned to California and later, in the company of his long-time acquaintance and co-defendant James Richardson, met with some unidentified persons and acquired a large amount of marijuana. The drugs, already tightly bundled into bricks using Saran Wrap, filled twenty-one duffle bags and suitcases. The men then went to the Country Suites Hotel in Ontario, where they spent the night in separate rooms.
The next morning, March 8, Rotarius drove Richardson to the Los Angeles International Airport ("LAX"), where both men were to take a flight to Cleveland. Richardson had three of the pieces of luggage, packed the night before, containing approximately fifty-seven pounds of marijuana. At LAX, a canine law enforcement unit, apparently as part of a routine, random luggage inspection, scrutinized Richardson's bags, and the dog alerted his handler to the possible existence of drugs in the suitcases. Because Drug Enforcement Administration ("DEA") personnel were involved with other possible drug activity at LAX, DEA Special Agent Kirk Johns, stationed at Cleveland-Hopkins International Airport ("Hopkins"), was notified that a quantity of possibly illegal drugs was headed to Hopkins, and Richardson was allowed to board his plane without interference. Special Agent Johns contacted Officer Tim Russell, of the Cleveland Police Department's Canine Narcotics Unit, and he and his canine partner, Beau, arrived at Hopkins some time later.
After Richardson's plane landed, Beau sniffed at Richardson's luggage and alerted Johns and Russell to the possible presence of drugs. Because they had obtained an anticipatory search warrant earlier that day, they opened one of the suitcases, and a quantity of marijuana was discovered. As Richardson claimed his baggage off of the luggage carousel at Hopkins, he was arrested by DEA personnel. A search of his person revealed a note that Richardson later claimed to have received from Rotarius which read, "Extended Stay America, Tiedeman Road off of 480 Freeway, phone number 760-963-9308, room 106."
DEA personnel, Officer Russell and Beau then executed a search warrant on room 106 at the Hotel. The room, by all accounts, looked "well lived in," and clothes were strewn about; cosmetics and a reasonably full refrigerator indicated that more than one person, male and female, had occupied the area. DEA agents found another sixty-three pounds of marijuana in the room in open suitcases similar to those Richardson had used. In one of the bags, bearing a tag with Rotarius' name, they found a glass pipe which was later confirmed to have been used for smoking methamphetamine. A suitcase with a tag bearing Rotarius' girlfriend's name, plastic ties similar to those which had secured Richardson's luggage, and many plane tickets, rental car receipts and other miscellaneous tags were found in other suitcases and trash cans in the room, indicating that Rotarius and others, later identified as his associates, traveled quite extensively and may have recently stayed in room 106. Also found in the room was a wallet containing Rotarius' driver's license, credit cards and other identifying items. When Special Agent Johns showed the driver's license to the hotel employee at the front desk, she confirmed that he was the one who had rented the room on March 3.
The police later confirmed that the telephone number on the note found on Richardson belonged to a cell phone listed to Rotarius and that a March 20, 2001 plane ticket he had previously purchased for a flight back to Ontario was never used.
Rotarius and Richardson were indicted as co-defendants for possession of marijuana in a quantity exceeding 20,000 grams, in violation of R.C.2925.11 (a felony of the second degree carrying a mandatory eight-year prison term) and preparation of drugs for sale (i.e. marijuana) in a quantity exceeding 20,000 grams, in violation of R.C. 2925.07 (a felony of the fourth degree).
Richardson, in custody since March 8, 2000, claimed that he called Rotarius to tell him about the indictment and learned that when he had been arrested, Rotarius had been behind him, watching.
Rotarius was arrested in California and returned to Cleveland. Richardson decided to accept a plea bargain and agreed to testify for the State against Rotarius in return for an agreed three-year prison sentence.
At trial, the parties stipulated that the quantities of marijuana confiscated from Richardson's luggage and seized in room 106 each individually weighed more than 20,000 grams. The State portrayed Rotarius as a career drug smuggler and the organizer of his crew of associates, including Richardson. Rotarius' lawyer attempted to portray Richardson as a liar who would do anything to avoid jail time and offered the jury the theory, without direct evidence, that his client had not been in the room since March 5 and did not know who else had used his room from March 5 to March 8.
The jury returned guilty verdicts on both counts, and Rotarius was sentenced to an eight-year mandatory prison term and a $15,000 fine on the possession count and a consecutive term of eighteen months in prison on the preparation for sale count.
Rotarius assigns three errors for our review.
 I. THE IMPOSITION OF CONSECUTIVE SENTENCES WAS CONTRARY TO LAW.
 A. THE COURT ERRED WHEN IT IMPOSED CONSECUTIVE PRISON TERMS IN VIOLATION OF R.C. 2929.14(E)(4).
 B. THE COURT ERRED WHEN IT IMPOSED CONSECUTIVE PRISON TERMS FOR ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF R.C. 2941.25.
Rotarius argues that the judge failed to state adequate findings for imposing consecutive prison sentences when she stated:
 This Court finds that this is one of the worst offenses of its kind. This Court finds that you traveled from one state to another state to commit this felony action, that you engaged in a quantity of drugs that is shocking to my conscience. And this Court finds that you are not remorseful when given the opportunity to express remorse for your conduct. Consequently the sentences will be consecutive.
R.C. 2929.14 and 2929.19 govern the procedure and substantive findings required when imposing consecutive prison terms. The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences * * *.[1]
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[2]
R.C. 2953.08 provides that when a sentencing court fails to make the findings required by R.C. 2929.14(E)(4), a reviewing court must remand the cause to the sentencing court with instructions to state on the record the required findings and reasons for the sentence imposed.[3]
While the reasons, stated in the record, for imposing consecutive sentences might arguably support a finding that Rotarius engaged in conduct warranting the maximum allowable prison term for any given offense,[4] or that his conduct and remorseless attitude supported a finding directed at the seriousness of his crime or the likelihood that he may re-offend,[5] they do not support the imposition of consecutive terms under the criteria mandated by R.C. 2929.14(E)(4). They do not indicate that consecutive sentences are necessary to protect the public from future crime or to punish Rotarius and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger the offender poses to the public, in addition to a finding either: that Rotarius committed his offenses while under community control sanctions or post-release control,[6] that no single prison term for any single offense committed adequately reflects the seriousness of his crimes committed or the harm done,[7] or that his criminal history indicates that consecutive sentences are necessary to protect the public from him.[8] Accordingly, this assignment of error has merit.
Rotarius further contends that possession of the drug marijuana, the offense of which he was convicted under R.C. 2925.11, and preparation of drugs for sale, the offense of which he was convicted under R.C. 2929.07, are offenses of similar import and he should not have been convicted of both offenses. R.C. 2941.25 permits a defendant to be punished for multiple offenses of dissimilar import.[9] If, however, a defendant's actions can be construed to constitute two or more allied offenses of similar import, the defendant may be convicted (i.e., found guilty and sentenced) of only one.[10] But, if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B).[11]
 The applicable test for deciding that issue is as follows: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" * * * If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted.
* * *
 [U]nder an R.C. 2941.25(A) analysis the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract."[12]
Under R.C. 2925.11(A), "No person shall knowingly obtain, possess, or use a controlled substance." According to R.C. 2925.07(A), as it existed at the time of the offense,[13] "[n]o person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance when the person intends to sell or resell the controlled substance or when the person knows or has reasonable cause to believe that another person intends to sell or resell the controlled substance." "Distribute," within the provisions of Chapter 2925 of the Revised Code, means "to deal in, ship, transport, or deliver but does not include administering or dispensing a drug."[14]
Accordingly, a person may, in the abstract, obtain, possess or use a controlled substance, in violation of R.C. 2925.11 (but not R.C. 2925.07), and a person may prepare for shipment or distribute a controlled substance in violation of R.C. 2925.07 (but, absent proof of acquisition, possession or use of the drug, not be in violation of R.C.2925.11). These two offenses do not constitute offenses of similar import, and the judge properly allowed conviction on both counts.
While no jury interrogatories exist in the record from which we may glean the thought processes used in arriving at the verdict, it was entirely possible, if the jury completely believed Richardson, for it to conclude that Rotarius "prepared for sale or distributed (i.e. dealt in)" without acquiring, possessing or using the marijuana in the exclusive possession of Richardson at the time of his arrest, and that he "possessed" the marijuana found in the room registered to him. Rotarius' purported conduct in monitoring and coordinating Richardson's movements, including witnessing his apprehension at Hopkins, could have provided the jury with evidence to support a guilty verdict under R.C. 2925.07, irrespective of the eventual discovery of marijuana in the hotel room. This part of the assignment of error is not well taken, to the extent that it seeks to invalidate Rotarius' convictions for both possession and preparation for sale of these two extreme-bulk quantities of marijuana.
 II. THE TRIAL COURT ERRED IN ALLOWING THE USE OF OTHER ACTS TESTIMONY TO THE PREJUDICE OF THE APPELLANT.
Evid.R. 404(B), dealing with the admissibility of "other acts" evidence at trial, states:
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59, dealing with the admission of "other acts" in the context of a criminal trial, provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
"If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible."[15]
Courts, while strictly construing Evid.R. 404(B) and R.C. 2945.59, and resolving doubts against admissibility,[16] have applied the above rules in such a way as to attempt to minimize the amount of prejudice the admission of evidence of prior conduct will have on the disposition of the current charges faced by an accused. "It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible" to prove that a defendant has an undesirable trait, disposition or propensity toward the commission of a certain type of crime.[17] "Further, [the Ohio Supreme Court] has stated that, `evidence of other acts of a defendant is admissible only when it "tends to show" one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question.'"[18]
Rotarius complains that Special Agent Johns was allowed to testify about finding the glass pipe in the bag with Rotarius' name tag in room 106 and that the pipe tested positive for the presence of methamphetamine. He claims that this evidence tends to show general bad character that tainted the decision-making ability of the jury by prejudicially depicting him as a person with a propensity for drugs and drug-related crime.
Rotarius objects to the admission of this testimony, however, against the backdrop of his own argument at trial, that others may have had access to his hotel room, with his permission, and that any contraband recovered from the room was placed there upon the initiative of someone else, without his knowledge or consent.
"The trial court has broad discretion in the admission of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of a trial court."[19]
In addition, as part of the charge, the judge gave a limiting instruction expressly reminding the jury that "other acts" testimony must only be evaluated by them for its permissible purposes (i.e. intent, knowledge or plan) as it related to this case. Given the complete trial record and the extremely limited amount of testimony that this assigned error references (a total of two questions), it is not well taken. Any prejudice, in light of the compelling, obvious evidence presented against Rotarius, if believed, such as his personal identification in room 106, the flights of March 3, March 5, and March 8, and the testimony of Richardson, was de minimus.
 III. THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE EVIDENCE OFFERED BY THE STATE DURING THE TRIAL, WHICH HAD NOT BEEN PROVIDED TO THE DEFENDANT.
Here Rotarius claims the judge erroneously admitted into evidence a document obtained from the Country Suites Hotel in Ontario, California, that enabled Special Agent Johns to confirm that Rotarius and Richardson stayed there on the night of March 7, 2001. Although, as discovery progressed, he had made a written request to the State for all documentary evidence to be used at trial, this document had not been disclosed, and Rotarius argues that it should not have been permitted to be used in any capacity at trial. He contends its use mandates reversal, but we disagree.
Crim.R. 16 requires each party to provide the discovery allowed by the rule upon written request of the other party. Upon request from the defendant, the rule requires the prosecution to provide, inter alia, any documents which are available to or within the possession of the State and are material to the preparation of the defense or that the prosecutor intends to use as evidence at the trial.[20] The enforcement provision of the rule states that the court may order [the non-complying] party to permit discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."[21] A judge has discretion to determine the proper response to a party's failure to fully comply with Crim.R. 16,[22] and is not required to exclude non-disclosed information at trial, although he has "the option to do so. "Reversible error exists only where the exercise of such authority by the trial court constitutes an abuse of discretion."[23]
The Ohio Supreme Court has held that "a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery."[24] When the State attempted to introduce the document from the Country Suites Hotel during the testimony of Special Agent Johns, Rotarius objected. The judge held a sidebar conference, on the record, and asked why the State failed to disclose it. While Rotarius claimed prejudice because of his inability to cross-examine Special Agent Johns on his testimony through the document, the State pointed out that Rotarius was provided with Richardson's signed statement in which he stated that he and Rotarius had stayed at the Country Suites Hotel on the night of March 7, 2001. Rotarius, therefore, had equal access to his own independent verification of Richardson's testimony, which the State secured via administrative subpoena to the hotel. Against this factual background, the judge refused to disallow the testimony of Special Agent Johns, the document itself never became an exhibit and it was not submitted to the jury. Additionally, Richardson, during cross-examination, testified about his activities on March 7, 2001, consistent with his earlier testimony. We can see no reason to find an abuse of discretion in the conduct of the judge in addressing this discovery dispute at trial, and this assignment of error has no merit.
We affirm the convictions, but vacate the sentences imposed and remand for re-sentencing.
It is ordered that the parties shall bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCURS MICHAEL J. CORRIGAN, P.J., CONCURS IN JUDGMENTONLY
[1] R.C. 2929.19(B)(2).
[2] R.C. 2929.14(E)(4). See also State v. Jones (2001),93 Ohio St.3d 391, 754 N.E.2d 1252; State v. Beck, 2000 Ohio App. LEXIS 1349 (2000) Cuyahoga App. No. 75193, unreported, citing State v. Albert
(1997), 124 Ohio App.3d 225, 705 N.E.2d 1274.
[3] R.C. 2953.08(G)(1).
[4] See R.C. 2929.14(C).
[5] See R.C. 2929.12.
[6] R.C. 2929.14(E)(4)(a).
[7] R.C. 2929.14(E)(4)(b).
[8] R.C. 2929.14(E)(4)(c).
[9] R.C. 2941.25(B); State v. Blankenship (1988), 38 Ohio St.3d 116,117, 526 N.E.2d 816, 817.
[10] R.C. 2941.25(A).
[11] State v. Jones (1997), 78 Ohio St.3d 12, 13-14, 676 N.E.2d 80,81.
[12] State v. Rance (1999), 85 Ohio St.3d 632, 636-637 710 N.E.2d 699,704-705 (internal cites omitted).
[13] R.C. 2925.07 was repealed in February 2001, and its provisions as to the elements of the offense were re-located at R.C. 2925.03(A)(2), but were otherwise unchanged.
[14] R.C. 3719.01(F), per R.C. 2925.01(A).
[15] State v. Broom (1988), 40 Ohio St.3d 277, 282, 533 N.E.2d 682,690.
[16] Id.
[17] State v. Wilkinson (1980), 64 Ohio St.2d 308, 314, 415 N.E.2d 261,267.
[18] Id. at 315, 415 N.E.2d at 268.
[19] State v. Joseph (1995), 73 Ohio St.3d 450, 460, 653 N.E.2d 285.
[20] Crim.R. 16(B)(1)(c).
[21] Crim.R. 16(E)(3).
[22] State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97.
[23] Id.
[24] Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, syllabus, par. 2; See, also, State v. Edwards (1993), 86 Ohio App.3d 550,555, 621 N.E.2d 606.