JOURNAL ENTRY AND OPINION
{¶ 1} Defendant J.B. Johnson appeals from his conviction for two counts of trafficking in crack cocaine in an amount less than one gram with schoolyard specifications, and possession of less than one gram of crack cocaine. For the reasons set forth below, we affirm.
 {¶ 2} On November 18, 2002, defendant and co-defendant Patty Harris were indicted for two counts of trafficking in less than a gram of crack cocaine with schoolyard specifications, and possession of less than a gram of crack cocaine. Co-defendant Patty Harris was also indicted for possession of criminal tools. Defendant plead not guilty and requested discovery from the state. In response, the prosecuting attorney indicated, in relevant part, that neither defendant nor co-defendant made a written or oral statement.
 {¶ 3} The record further reflects that co-defendant Patty Harris subsequently entered a guilty plea to the charge of possession. The matter subsequently proceeded to a jury on June 5, 2003.
 {¶ 4} For its case, the state presented the testimony of Cleveland Police Det. Ed Thomas, Patty Harris, and Cleveland Police Det. John Graves.
 {¶ 5} Det. Thomas testified that he works undercover in the vice unit and investigates complaints of drug use and prostitution. On or about September 20, 2002, Thomas's partner used a confidential informant to make a controlled buy from Patty Harris. Based upon information gathered at this time, the officers obtained warrants to search residences on Lawn Avenue and Wakefield Avenue which were executed on or about September 26, 2002. At the Wakefield residence, they observed a scale with residue. The officers returned to Wakefield later that evening and arrested defendant. According to Thomas, after defendant was apprised of his constitutional rights, he stated that the scale came from his girlfriend's house and that he wished to work with the police.
 {¶ 6} On cross-examination, Det. Thomas admitted that the confidential informant in the Harris matter was actually a woman who had recently been arrested for prostitution and agreed to work with the police. He further admitted that Harris resides in the same building as Archie Pomales, that Pomales's apartment had also been searched, and that he subsequently plead guilty to drug possession. During the execution of the search warrant at Harris's apartment, the officers recovered a crack pipe and also arrested Harris's fiancé, Michael Rowe. During the execution of the Wakefield search warrant, the officers determined that defendant's ex-wife, Sharon McLester, resided at that home, and charged her with possessing items found there.
 {¶ 7} Finally, Det. Thomas testified that, at the time of his arrest, defendant admitted that he had "made a transaction" with Harris, but Thomas acknowledged that this statement was not recorded in any of the police reports.
 {¶ 8} Patty Harris testified that she had smoked crack cocaine since she was sixteen, that she is addicted, and had worked as a prostitute to support her drug habit. She further testified that defendant sold drugs near her home on Lawn Avenue, and that she sold drugs for him.
 {¶ 9} On September 20, 2002, a woman approached Harris to buy drugs then gave Harris money. Harris took the money and then rode her bicycle to an alley on Wakefield, which is across from defendant's house. She gave the money to defendant and told him that she needed a $20 rock of crack cocaine, and in return, defendant gave her a rock of cocaine. Harris then noticed Det. Graves watching her as she returned to the area where the woman first approached her.
 {¶ 10} Harris further testified that the police executed a search warrant at her home on September 26, 2002, and she and defendant were both arrested. Harris initially told defendant that she would testify that she did not obtain drugs from him but had simply sold one of her rings to him. Later, however, she decided to enter into a guilty plea and also indicated that she would testify during the state's case against defendant. According to Harris, defendant attempted to learn the identity of the state's informant, and also put his hands on her and demanded to know why she had spoken with the police. Later, a man came to her house, asked her name, and shot at her house saying, "The next bullet won't miss."
 {¶ 11} On cross-examination, Harris admitted that she had given the arresting officer fake names and false social security numbers and that she plead no contest to falsification. In addition, in 1995, she was convicted of drug abuse. Harris admitted that she lost custody of her fourteen-year-old daughter due to her drug use.
 {¶ 12} Det. John Graves testified that the police received numerous complaints regarding drug use in the area of West 58th Street and Lawn Avenue. Graves later learned from an informant that drug sales were made at 5815 Lawn Avenue, which is approximately 700 feet away from St. Colman Elementary School. Graves worked with an informant to make a controlled drug buy at that residence. Graves searched the woman's pockets and had her make a drug purchase with a marked $20 bill. He testified that he watched as the informant went to the apartment, spoke with Harris, and gave her the $20 bill. Harris then rode a bicycle northward on West 58th Street and made a call on a cell phone. A short time later, she arrived at defendant's house and gave the money to him, and he dropped something small into her left hand Harris then returned to the informant and handed her an object. The informant immediately returned to Det. Graves, and gave him the object. The object later tested positive for crack cocaine.
 {¶ 13} After the buy, Det. Graves continued surveillance of Harris at Lawn Avenue and defendant at the Wakefield house. He obtained warrants to search both locations, and after the search warrant was executed at the Wakefield house, defendant told Graves that McLester was his ex-wife and that he lived on the east side. According to Graves, defendant offered to provide the name of his supplier. In response, Graves declined to arrest defendant and did not charge him with possession of the scale. However, defendant did not provide the information he had promised. Graves further testified that, because defendant's offer of cooperation did not materialize, he did not mention it in his police report. He admitted that he did not prepare a supplemental report, which would have contained this information, and he testified that neither the prosecuting attorney nor defendant's attorney asked him to list defendant's statements.
 {¶ 14} On cross-examination, Det. Graves admitted that he left the informant unattended in order to follow Harris, that his pre-buy search of the informant was not extensive, and that the marked $20 bill was never recovered. He also admitted that, in the affidavit in support of a search warrant, he stated that he observed Harris give the informant crack cocaine, and not simply an object, as he had testified.
 {¶ 15} Finally, the state and the defense stipulated to the authenticity of the report of the Cleveland Police Department Scientific Investigative Unit which determined that the object recovered in this instance tested positive for crack cocaine and weighed .05 grams.
 {¶ 16} Defendant elected to present evidence and offered the testimony of his daughter, Zoreda McLester.
 {¶ 17} McLester testified that last September, she left a bar to meet her father and ask him for money and observed Patty Harris handing over a bag of four or five rings to her father. McLester wanted some of the rings but her father said that she could not have them because he might have to give them back. She told the court that she still had the rings and displayed them for the court. McLester further testified that her father does not live at the Wakefield Avenue home but visits there approximately every other day.
 {¶ 18} On cross-examination, McLester testified that the meeting which she observed occurred at night. She did not witness her father give Harris any money. She had no explanation as to why a scale with cocaine residue would have been recovered from the Wakefield house.
 {¶ 19} Defendant was subsequently convicted of the charges of trafficking and possession and the specifications. The trial court determined that imprisonment was consistent with the purposes of R.C. 2929.11 and sentenced him to one year for each offense, to be served concurrently. Defendant now appeals and assigns three errors for our review.
 {¶ 20} Defendant's first assignment of error states:
 {¶ 21} "The trial court erred by allowing inadmissible evidence in violation of Evid.R. 404(B) and 403, and appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 22} Within this assignment of error, defendant asserts that the trial court permitted the introduction of inadmissible evidence when the state was permitted to offer into evidence a digital scale confiscated from Sharon McLester's home on Wakefield Avenue.
 {¶ 23} Pursuant to Evid.R. 404(B),
 {¶ 24} "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} Similarly, R.C. 2945.59 provides:
 {¶ 26} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 27} However, "[e]vidence intrinsic to the crime for which the defendant is on trial * * * is not governed by Rule 404(b)."United States v. Manning (C.A. 1, 1996), 79 F.3d 212, 218, certiorari denied (1996), 117 S.Ct. 147, 136 L.Ed.2d 93. That is, "other acts" evidence is admissible where "`they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'" State v. Roe (1990), 41 Ohio St.3d 18, 23,535 N.E.2d 1351, citing State v. Wilkinson (1980),64 Ohio St.2d 308, 317, 18 O.O.3d 482, 488, 415 N.E.2d 261, 269, quotingUnited States v. Turner (C.A. 7, 1970), 423 F.2d 481, 483-484. See, also, State v. Smith (1990), 49 Ohio St.3d 137, 139-140,551 N.E.2d 190 (evidence of other acts is admissible if it tends to prove a specific element of the crime charged); State v.Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (other acts which form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment and which are inextricably related to the alleged criminal act are admissible).
 {¶ 28} In accordance with the foregoing, this assignment of error is without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "Appellant was denied due process of law when counsel was not provided with written summaries of Appellant's oral statements as required by Crim.R. 16(B)(1)(a)(ii)."
 {¶ 31} Defendant next asserts that the trial court erred in allowing the state to introduce evidence that defendant orally admitted that he possessed digital scales with cocaine residue and orally offered to act as an informant against his supplier, because these statements were not disclosed in the state's discovery response. Crim.R. 16(B)(1)(a) provides, in part:
 {¶ 32} "Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 33} "* * *
 {¶ 34} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer[.]"
 {¶ 35} Crim.R. 16(E)(3) provides for the regulation of discovery and permits a trial court to exercise discretion in selecting the appropriate sanction for a discovery violation. SeeState v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97,110; State v. Parson (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 487, 453 N.E.2d 689, 691; State v. Edwards (1976),49 Ohio St.2d 31, 42, 3 O.O.3d 18, 24, 358 N.E.2d 1051, 1059.
 {¶ 36} Crim.R. 16(E)(3) provides that:
 {¶ 37} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 38} The trial court has discretion to determine what sanction is appropriate when the state fails to disclose discoverable material. State v. Wiles (1991), 59 Ohio St.3d 71,78, 571 N.E.2d 97. In exercising that discretion, "a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Lakewood v. Papadelis,
(1987), 32 Ohio St.3d 1, 5, 511 N.E.2d 1138. Moreover, "[w]here, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted." Parson, supra, at the syllabus.
 {¶ 39} In this instance, we find no abuse of discretion. The record reveals that the prosecution's failure to disclose was not a willful violation as the investigating officers did not include the information in the police report and did not reveal it to the prosecuting attorney until the eve of trial. In addition, we are not convinced that foreknowledge of the statement would have benefitted the accused in the preparation of his defense because the trial court offered to defendant the opportunity to continue the trial and he chose to go forward. (Tr. 66) Moreover, we do not find that the accused was prejudiced because no additional information was ever provided to further support the alleged oral statements.
 {¶ 40} This assignment of error is without merit.
 {¶ 41} Defendant's third assignment of error states:
 {¶ 42} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 43} In this assignment of error, defendant asserts that his convictions are against the manifest weight of the evidence because the state's key witness, Patty Harris, is a "crack addicted prostitute, who is an admitted liar, and whose memory of the incident is clouded by her drug usage on September 20, 2002." (Appellant's Brief at 16).
 {¶ 44} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 38,42, 72 L.Ed.2d 652, 102 S.Ct. 2211. Accord State v. Otten
(1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra.
 {¶ 45} In this matter, Harris was a key witness, an admitted drug addict who has engaged in prostitution. However, the jury, which was in the best position to determine the truth of her testimony, was entitled to evaluate her testimony as it saw fit and give it the appropriate probative weight. In addition, Harris's testimony was supported by Det. Graves who stated that he initiated a controlled buy from Harris, then watched as Harris called defendant, went to see him, and also observed defendant drop something small into her hand Moreover, it is undisputed that a scale with drug residue was recovered from this same location when a search warrant was subsequently executed. In accordance with the foregoing, this assignment of error is without merit.
 {¶ 46} The judgment ist affirmed.
Judgment affirmed.
 Rocco, J., concurs.
 Cooney, J., concurs in judgment only.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.