OPINION
{¶ 1} Defendant-appellant, Anthony S. Davis ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of possessing criminal tools, a violation of R.C. 2923.24, a felony of the fifth degree, and burglary, a violation of R.C. 2911.12, a felony of the second degree. Appellant entered a no contest plea to a charge of breaking and entering, a violation of R.C. 2911.13, a felony of the fifth degree.
 {¶ 2} The charges against appellant arose from events occurring in August 2003, when break-ins occurred at the Patient Care Medical Services ("PCMS") offices and the Columbus Speech and Hearing Center ("Center"). On the evening of August 22, 2003, Mary Lesko, an employee of PCMS, was working late. Hearing noises, she left her office to inspect and saw a man standing in the common area to the PCMS suite of offices. The man, whom this employee later identified as appellant, said that he was looking for a nurse. The employee informed the man that the offices were closed for the day, and the man left. The employee then found evidence that someone had tampered with the door and, upon further inspection, she and other employees found that filing cabinets and boxes of cell phones had been disturbed. A Columbus police officer dusted the cell phone boxes for fingerprints, and a fingerprint examiner matched a fingerprint to appellant.
 {¶ 3} On the morning of August 27, 2003, employees of the Center found evidence that desks, a file cabinet, and offices had been tampered with. Leanne Parnell found a large screwdriver on her desk and discovered her CD player and a CD missing. Katie Toman, whose office was down the hall from Parnell's office, found that her desk drawers had been disturbed, but no items were missing. A Columbus police officer dusted both areas for fingerprints, and a fingerprint examiner matched several fingerprints from the inside of Toman's desk drawer to appellant.
 {¶ 4} On September 26, 2003, the Franklin County Grand Jury indicted appellant on four counts arising from the two incidents. Counts 1 and 2 of the indictment charged appellant with breaking and entering and possession of criminal tools arising out of the August 27, 2003 break-in at the Center. Counts 3 and 4 (as amended) charged appellant with burglary and possession of criminal tools arising from the August 22, 2003 break-in at PCMS.
 {¶ 5} On February 2, 2005, while voir dire was in progress, appellant indicated that he wanted to plead no contest to Count 1, breaking and entering at the Center, and that he wished to proceed pro se. After lengthy questioning, the trial court allowed appellant to represent himself, but defense counsel remained at counsel table in an advisory position. At oral argument before this court, appellant's counsel relayed appellant's belief that he never signed a plea form. However, our record includes a no contest plea form, which appellant signed on February 2, 2005, and the court filed on February 9, 2005, and by which appellant pled no contest to the charge of breaking and entering at the Center.
 {¶ 6} After trial began, appellee, State of Ohio, moved to dismiss Count 4, possessing criminal tools at the PCMS offices. Thus, only Counts 2 and 3, possessing criminal tools at the Center and breaking and entering at the PCMS offices, were before the jury. On February 8, 2005, the jury found appellant guilty on both counts.
 {¶ 7} At appellant's request, the court proceeded immediately to sentencing. The court sentenced appellant to 12 months as to Counts 1 and 2, to be served concurrently, and eight years for Count 3, to be served consecutively to the 12-month sentence.
 {¶ 8} Appellant timely appealed to this court, and he has raised the following assignments of error:
ASSIGNMENT OF ERROR NO. 1:
A TRIAL COURT ABUSES ITS DISCRETION WHEN IT ALLOWS PRIOR BAD ACTS INTO EVIDENCE IN A CRIMINAL TRIAL.
ASSIGNMENT OF ERROR NO. 2:
A TRIAL COURT COMMITS REVERSIBLE ERROR WHEN IT FAILS TO [INSTRUCT] THE JURY IN A CRIMINAL TRIAL OF THE ELEMENTS OF AN OFFENSE.
ASSIGNMENT OF ERROR NO. 3:
A TRIAL COURT ABUSES ITS DISCRETION WHEN IT ALLOWS THE PROSECUTION TO PRESENT EVIDENCE REGARDING CHAIN OF CUSTODY OF A FINGERPRINT CARD WHERE SUCH EVIDENCE WAS NOT TIMELY SUBMITTED TO THE DEFENSE.
ASSIGNMENT OF ERROR NO. 4:
A TRIAL COURT ABUSES ITS DISCRETION WHEN IT PUNISHES A CRIMINAL DEFENDANT FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL BY CHARGING WHAT IS COMMONLY REFERRED TO AS "RENT."
ASSIGNMENT OF ERROR NO. 5:
THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} We begin with appellant's fifth assignment of error, in which he asserts that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 10} In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror."State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387. Moreover, "it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible." State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10.
 {¶ 11} As to the charge of breaking and entering on August 22, 2003, at the PCMS offices, the state offered the testimony of Ms. Lesko. Lesko testified that the suite of PCMS offices is on the fourth floor of a four-story office building, which is accessible only by key card after hours. Lesko stated that she was working in her office at about 7:45 p.m., after normal business hours. She heard noises and walked out of her office. She encountered a man, whom she later identified as appellant, in the foyer to the PCMS offices. The man told Lesko that he was looking for a nurse. On cross-examination by appellant, Lesko admitted that a service dog accompanying her was not agitated upon arrival at the offices.
 {¶ 12} After the man's departure, Lesko and other employees found that locks on filing cabinets in the suite of offices were broken and that boxes of cell phones had been disturbed. A Columbus police detective found evidence of forced entry on a door to the building. That same detective tested for fingerprints on the boxes of cell phones. A Columbus police fingerprint examiner matched one of two useable prints to appellant's left index finger. Appellant later admitted to a Columbus police investigator that he was at the PCMS offices, but stated that he was there looking for a job. According to the investigator, appellant also stated that Lesko was upset because the offices had been burglarized and that she took him through the offices.
 {¶ 13} As to the charge of possessing a criminal tool arising from the August 27, 2003 break-in at the Center, which occupies three floors of a four-story office building, the state offered the testimony of three Center employees. They testified that doors and desk drawers in the second-floor offices had been pried open. Parnell found a large screwdriver on her desk and also found a CD player and CD missing from her office.
 {¶ 14} A Columbus police detective dusted for fingerprints at the scene. There was conflicting testimony about whether anyone attempted to lift fingerprints from the screwdriver, which police did not recover immediately. No fingerprints from the screwdriver were admitted into evidence. Of the prints lifted from Toman's office, a Columbus police fingerprint examiner matched the prints to four fingers on appellant's left hand. On cross-examination by appellant, the examiner admitted that she had made one mistaken match early in her training, but had made hundreds of thousands of identifications during her 11-year tenure as an examiner.
 {¶ 15} In support of his argument that the verdicts are against the manifest weight of the evidence, appellant admits that he was present at both locations. According to appellant, "[a]t one facility he was in search of an employee and at the other he was in search of gainful employment." While his fingerprints were found at both scenes, he argues, those fingerprints do not indicate when he was there. Finally, he points to Lesko's testimony that he was well-mannered and calm when she encountered him. He asks this court to determine whether this evidence is credible and reliable.
 {¶ 16} We find that the evidence is credible and reliable. From our careful review of the record in this case, including the direct evidence of appellant's presence at both scenes, we conclude that the jury did not lose its way. It was reasonable for jurors to believe the testimony of the state's witnesses and, from that testimony, find appellant guilty on both charges. Therefore, we overrule appellant's fifth assignment of error.
 {¶ 17} In his first assignment of error, appellant asserts that the trial court abused its discretion when it admitted evidence of appellant's prior bad acts, in violation of Evid.R. 404(B). In essence, appellant argues that his plea of no contest to the charge of breaking and entering at the Center precluded the state from admitting any evidence concerning the break-in. An abuse of discretion standard applies to our review. State v.Mardis (1999), 134 Ohio App.3d 6, 20.
 {¶ 18} On October 18, 2004, even though he was represented by counsel, appellant filed a pro se motion for relief from prejudicial joinder. In his motion, he asked the court to separate the offenses into separate trials. He argued that, even though the indictment included two counts of possessing criminal tools arising from the two break-ins, the state only had one tool from one break-in. Although there is no record of the court hearing or deciding appellant's joinder motion expressly, at a hearing on November 8, 2004, the court discussed appellant's numerous pro se motions generally and denied all of them. At that hearing, appellant also waived his right to a jury trial as to the counts arising from the break-in at the Center (Counts 1 and 2), thus mooting his motion regarding joinder. However, on the first day of trial, February 2, 2005, appellant indicated that he wished to plead no contest to the breaking and entering charge (Count 1) and proceed to a jury trial on the remaining three counts. The record reveals the following:
MR. BENTON [appellant's counsel]: Your Honor, it's Mr. Davis' request that the Court permit him to enter a no contest plea to the one count of the indictment that charges him with breaking and entering and proceed to trial only on the remaining count related to burglary.
THE DEFENDANT: The remaining three counts.
(Tr. at 12.) Thus, not only did appellant and his counsel fail to raise the joinder issue to the court at the time of trial, they both indicated their desire to proceed on all remaining counts.
 {¶ 19} As noted, during voir dire, appellant asked to proceed pro se. As part of the discussion regarding appellant's request, appellant revealed that he and his counsel disagreed over whether appellant's no contest plea to the charge of breaking and entering at the Center would preclude the state from presenting the fingerprint evidence in support of the charge of possessing a criminal tool at the Center. The court informed appellant that it would admit all evidence relevant to the possession charge and explained its reasoning in detail.
 {¶ 20} During opening arguments, counsel for appellee referred to the August 27, 2003 break-in at the Center. Appellant objected, stating: "This objection centers around the fact that a no contest plea has already been stipulated that will be entered into this case, and mentioning past wrong acts will prejudice the jury as far as the burglary case." (Tr. at 62.) Appellee countered that evidence of the break-in at the Center was necessary to support a showing that a tool had been used "criminally." (Tr. at 63.) The court overruled the objection.
 {¶ 21} When a fingerprint examiner began to testify regarding the prints found in Toman's office at the Center, appellant again objected. Appellant stated: "The screwdriver was not found in that office. That office has nothing to do with the screwdriver. He's bringing that up now just to taint the jury that there was another crime involved, and that's not under the jury's consideration at this point." (Tr. at 221.) The court overruled the objection, stating: "I understand your argument, Mr. Davis, but whether that print has anything to do with a screwdriver is up to the jury." (Tr. at 222.)
 {¶ 22} On appeal, appellant raises Evid.R. 404(B), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 23} Thus, as a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial is inadmissible. However, "other acts" evidence is admissible if it is related factually or chronologically to the acts alleged in the indictment or if the evidence forms the immediate background for the crimes charged. State v. Thompson (1981),66 Ohio St.2d 496. Evidence of other crimes may be presented when they are so blended or connected with the one on trial that proof of one incidentally involves the other, explains the circumstances thereof or tends logically to prove any element of the crime charged. State v. Wilkenson (1980), 64 Ohio St.2d 308, 317.
 {¶ 24} Here, as the trial court explained, in order for the state to prove that appellant was guilty of possessing a criminal tool, the state had to show that appellant possessed a tool "with purpose to use it criminally." R.C. 2923.24(A). The state did this by introducing evidence of the following: (1) desks, a file cabinet, and offices at the Center had been tampered with; (2) a CD player and CD were missing from Parnell's office; (3) a large screwdriver was found in Parnell's office; and (4) appellant's fingerprints were found inside a desk drawer in Toman's office. While some or all of this evidence would have supported the breaking and entering charge relating to the Center, the state introduced it for independent purposes: (1) to identify
appellant as the person who possessed the screwdriver; and (2) to show appellant's intent to use the screwdriver to commit the crime of breaking and entering at the Center. As R.C. 2923.24(C) provides, in order to find appellant guilty of the felony charged, the jury had to determine whether he intended to use the screwdriver to commit breaking and entering. Therefore, admission of the evidence did not violate Evid.R. 404(B).
 {¶ 25} Nor did admission of evidence of the Center break-in prejudice appellant as to the PCMS break-in. In opening arguments, appellee presented the break-ins as "two separate factual situations, two separate incidents[.]" (Tr. at 53.) During the trial, appellee offered evidence with respect to each break-in separately from the other. At closing arguments, appellee argued to the jury that the evidence supported each of the elements applicable to each separate break-in. And, the court instructed the jury to keep its consideration of the two charges separate. The court stated:
The charges set forth in each count of the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count.
* * *
Ladies and gentlemen, that last instruction I gave you, in simple terms what it means is you can't find the Defendant guilty of one count simply because you found him guilty of the other. You can't make that broad generalization here. * * *
(Tr. at 359.)
 {¶ 26} The court went on to explain that, if the jury found that appellant had committed an act or acts charged in the indictment, then the jury could only consider "the evidence of those acts or act as bearing upon the Defendant's motive, intent, opportunity, preparation, plan, or knowledge." (Tr. at 359-360.) The court cautioned, however, that the state "must prove identity beyond a reasonable doubt. If you find that the Defendant committed the other act or acts, you may not presume that he committed acts charged." (Tr. at 360.)
 {¶ 27} As we have already determined, the manifest weight of the evidence supported the jury's guilty verdict as to each charge. The state presented evidence to support each charge independent of the other. Therefore, we find that the court did not abuse its discretion by allowing the submission of evidence relating to the August 27, 2003 break-in at the Center, and we overrule appellant's first assignment of error.
 {¶ 28} In his second assignment of error, appellant alleges that the trial court erred by failing to instruct the jury properly. Specifically, appellant alleges that the court failed to give the jury complete definitions of the elements of the crimes at issue. We disagree.
 {¶ 29} As to the charge of possessing criminal tools, appellant alleges that the court failed to define "criminal tool." In its verbal instructions to the jury, the court stated that the jury "must find beyond a reasonable doubt that on or about the 27th day of August, 2003, in Franklin County, Ohio, the Defendant possessed a device with purpose to use it criminally." (Tr. at 361.) The court also stated: "If any word is not specifically defined for you, specially defined, then you're to use the everyday common English usage meaning of the word." Id.
 {¶ 30} The court also explained further: "Now, if your verdict is guilty concerning possession of criminal tools, you will separately decide whether the State has proven beyond a reasonable doubt that the Defendant intended to use the device to commit the offense of breaking and entering." (Tr. at 362.) The court then went on to explain each element of a breaking and entering offense, that is, that appellant "knowingly by force, stealth, or deception trespassed in an unoccupied structure with purpose to commit therein any theft offense." (Tr. at 362.) As to breaking and entering, the court defined the terms "force," "trespass," "knowingly," and "theft." As appellant points out, the court did not define the terms "stealth," "deception" or "unoccupied structure."
 {¶ 31} This failure to define terms, appellant argues, resulted in the jury's confusion and their need to ask questions during deliberation. The jury submitted four written questions to the court, and three of those questions related to the criminal tools charge. First, the jury asked: "In order to find [defendant] guilty of possession of criminal tools as charged do we need to believe that the screwdriver had to be the tool used?" The court responded:
No. Please refer to your Jury Inst[ruction] last paragraph page 6 continued on to page 7.
Before you can find the Defendant guilty of [possession of criminal tools] you must find . . . [sic] that he possessed the screwdriver, exhibit G, with purpose to use it criminally.
 {¶ 32} Second, the jury asked: "What if all cannot agree on single verdict?" The court responded to this question by giving the jury a charge based on State v. Howard (1989),42 Ohio St.3d 18.
 {¶ 33} Then, the jury asked two simultaneous questions. First: "Can the defendant be found guilty without all agreeing that exhibit `G' was not in possession although some tool was used?" The court responded: "No." Lastly: "Based on the verdict does that reference to criminal tools refer to only the evidence exhibit `G'?" The court responded: "Yes."
 {¶ 34} Ordinarily, as Crim.R. 30(A) provides, a party may not assign as error the giving of, or the failure to give, any instruction unless the party makes a timely objection thereto. The only exception to this waiver provision is where there is plain error or a defect affecting a substantial right. Crim.R. 52(B). We are to invoke the plain error doctrine only in exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 94-95. An instruction does not constitute plain error unless, but for the error, the outcome of the trial would clearly have been different. State v. Ballew (1996), 76 Ohio St.3d 244, 251;State v. Rice (Mar. 26, 1987), Franklin App. No. 86AP-911.
 {¶ 35} Our review of the record indicates that appellant objected to the jury instructions, but on grounds different from those presented here. Therefore, we agree with appellant that he waived all but plain error with respect to the definitions contained in the jury instructions.
 {¶ 36} To support error, appellant argues that the jury's questions indicate that the court's instructions were "inadequate and confusing to the jury. This, coupled with a pro se defendant, beg for a new trial based on ambiguous jury instructions." We find, however, that the jury's questions do not indicate confusion about the definitions that might apply to the charges. Rather, three of the jury's questions indicate confusion about whether appellant could be convicted of possessing a criminal tool other than the screwdriver, not whether the screwdriver or any other device was a "criminal tool." The other question, which prompted the Howard charge, indicates a lack of agreement among jurors, not confusion about the elements at issue.
 {¶ 37} In giving both the written and verbal instructions, the court followed closely the language of the applicable statutory provisions. While the court did not define "criminal tool," the court did provide extensive instruction concerning the specific criminal purpose alleged to be at issue, breaking and entering. And, while the court did not provide special definitions for every term applicable to each charge, there is no indication in this record that the jury was incapable of applying ordinary English usage to these terms. Appellant has not directed us to a single case that would require us to find the instructions, taken as a whole, insufficient. More importantly, appellant has not shown that, but for the instruction, the outcome of the trial would have been different. As we concluded above, the weight of the evidence supports the jury's findings.
 {¶ 38} Finally, appellant urges us to consider that he was acting pro se. We find, however, that his "advisory" counsel had substantial involvement in the jury instructions and even filed proposed instructions. In addition, appellant made other specific objections to the instructions and even persuaded the court to make changes to them. Therefore, for all of the stated reasons, we overrule appellant's second assignment of error.
 {¶ 39} In his third assignment of error, appellant asserts that the trial court allowed the prosecution to present evidence regarding the chain of custody of a fingerprint card without having timely submitted the evidence to the defense. However, appellant directs our attention to the portion of the transcript where appellant, not the prosecution, questions Officer Lewis about a chain of custody slip — a slip appellant now says "had no connection to Davis' case[.]" After questioning Officer Lewis about the chain of custody slip, appellant then objected to its use and stated that the prosecution had not given it to him in discovery. The prosecution responded that the state was not going to offer the chain of custody slip as evidence and, therefore, Crim.R. 16 did not require its release to appellant. See Crim.R. 16(B)(1)(c). The court agreed and overruled the objection.
 {¶ 40} Appellant's alleged error is based on a misreading of the record. It was his own cross-examination that invited Officer Lewis' testimony concerning chain of custody, not the prosecution's examination. He may not complain on appeal about an alleged error he invited. State ex rel. Beaver v. Konteh
(1998), 83 Ohio St.3d 519, 520-521. Therefore, we overrule appellant's third assignment of error.
 {¶ 41} In his fourth assignment of error, appellant asserts that he "was clearly assessed a `rental fee' for usage of the courtroom in the exercise of his constitutional right to a jury trial." He directs us to a discussion with the trial court, which he argues "is penalizing Davis for going to trial."
 {¶ 42} The court sentenced appellant to 12 months on each charge arising from the break-in at the Center, to be served concurrently. Thus, appellant received no additional time for his crime of possessing a criminal tool.
 {¶ 43} The court sentenced appellant to eight years for his crime of burglary at the PCMS offices, to be served consecutive to the 12-month sentence. The court did not impose a fine, but did assess costs. The court explained:
* * * I normally do not assess costs, but in this particular case the Defendant had me fire one lawyer, had me hire another lawyer for him, then didn't want that lawyer, who sat here throughout this trial. We went through a delay of trial in days — hours, in order to get his witnesses here from the institution at State expense, and then he didn't even use those witnesses at trial. This has been a pattern of behavior. I don't normally do this, but I'm doing it in this case.
(Tr. at 396-397.)
 {¶ 44} The court then gave a detailed explanation of his reasoning for the maximum burglary sentence and consecutive sentences. He focused on appellant's record, which included eight theft-related convictions over 19 years, including offenses committed while appellant was on parole. The court concluded: "[I]t appears that you're either locked up behind bars or you're out messing with other people's property in one way or another." (Tr. at 401.)
 {¶ 45} The court then informed appellant of his right to appeal his convictions and told him that, if he could not afford a lawyer, counsel would be appointed for him at state expense. At his request, appellant's current counsel was appointed.
 {¶ 46} Appellant then identified for the court another case that "should be coming before you shortly." (Tr. at 405.) He asked for counsel to be appointed in that case, and he made a request for a specific lawyer who was not immediately familiar to the court. The following exchange, which contains the excerpt to which appellant points us here, then occurred:
MR. DAVIS: When will I know? Will she contact me or will the Court contact me? When will I know if the Court has appointed her?
THE COURT: Well, for the time being Mr. Benton is on these cases, so if that changes, you'll be notified.
MR. DAVIS: Thank you, Your Honor.
THE COURT: Mr. Davis, once again I'm not saying this to be mean, but you started out with a chance to have a four-year sentence. You had a chance before we started this one to have an eight-year sentence. You're now up to nine years and you need to get —
MR. DAVIS: Five more to go.
THE COURT: — you need to be getting somebody to be talking on your behalf to the Prosecutor to find out what can be done or we'll just keep going and going and going here. And I don't know what the evidence is on these other cases. * * *
* * * But you seem to be an intelligent man. I don't know why you're bent upon marching down this road that you seem to be marching down. It just doesn't make any sense to me.
(Tr. at 406-407.)
 {¶ 47} From our reading of the sentencing-related discussions between appellant and the trial court, as well as our reading of the pre-trial, trial, and post-trial proceeding transcripts, we can only conclude that the trial court provided to appellant every possible accommodation. Appellant's use of an isolated statement taken out of context misrepresents the trial court's intentions, which clearly were to assist appellant and to lessen any further damage appellant might cause to his own defense. Appellant's claim that the trial court penalized him for asserting his right to a jury trial is simply baseless. Therefore, we overrule his fourth assignment of error.
 {¶ 48} Having overruled appellant's first, second, third, fourth, and fifth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt and Sadler, JJ., concur.